IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MILO, LLC : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 16-5759 |
| VIRGIL PROCACCINO, ET AL. : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                             **MARCH __22__, 2018**

Presently before the Court is Defendants 200 Christian Street Partner's, Arthur Elwood's, and Virgil Procaccino's Motion to Dismiss Plaintiff's Amended Complaint Pursuant To Fed. R. Civ. P. 12(b)(6). (ECF No. 18.) For the following reasons, Defendants' Motion will be DENIED.

**I.    BACKGROUND**

This action arises from the sale of a house. Defendants Virgil Procaccino ("Procaccino") and Arthur Elwood ("Elwood") are partners in the Defendant company 200 Christian Street Partners ("200 CSP"), which built and then sold a house ("the Home") to Plaintiff MILO, LLC ("MILO"). MILO now asserts claims against Defendants, all related to Defendants' alleged defective construction of the Home.

    **A.    Factual Background**[1]

Plaintiff's First Amended Complaint alleges that David and Beth Ferreira formed MILO, a limited liability company registered in Delaware, for the purpose of purchasing and holding assets in trust for their two children. (Am. Compl. ¶¶ 12, 21-22, ECF No. 12.) Virgil Procaccino and Arthur Elwood are partners in 200 CSP, a limited liability company formed in Pennsylvania.

---

[1] For the purpose of this Motion, the factual allegations in Plaintiff's Amended Complaint are taken as true. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).

(*Id.* ¶¶ 13-15.)  200 CSP builds and sells high-end homes in Philadelphia.  (*Id.* ¶ 27.)  In 2014, MILO authorized David Ferreira to search for and purchase a newly-constructed house in Philadelphia, Pennsylvania, to serve as the Ferreira's new home.  (*Id.* ¶¶ 23, 26.)  On November 11, 2014, David Ferreira agreed to buy a new house built by 200 CSP located at 501A South 12th Street in Philadelphia.  (*Id.* ¶¶ 2, 30.)  The purchase price was $1,955,000.  (*Id.* ¶ 8.)  Ferreira assigned the Agreement of Sale to MILO, which then made settlement on the Home on January 15, 2015.  The Ferreiras moved into the Home in March, 2015.  (*Id.* ¶¶ 32-34.)

MILO alleges that the Home suffers from numerous material defects due to shoddy construction.  Specifically, MILO alleges that the Home has a water infiltration problem, which has led to leaks inside the Home, a recurring fungus growing in one of the bedrooms, and mold.  (*Id.* ¶¶ 40, 50-60, 70-73, 87.)  MILO alleges that it hired independent home inspectors to assess the water issue and that these inspections revealed significant construction defects in the Home.  (*Id.* ¶¶ 84-89.)  These defects include:  a foundation wall below grade and not to code; insufficient wall cavity thickness in the brick veneer; inadequately secured brick veneers lacking proper relief angles, leading to a risk of collapse; a structurally unstable foundation not compliant with the building code; and mold and water infiltration.  (*Id.* ¶¶ 119-29.)  As a result of these defects and the water issues, the Ferreiras allege that the Home was not safe to live in and so they were forced to move out and seek temporary residence elsewhere from late 2015 through the summer of 2016.  (*Id.* ¶¶ 87, 100.)

MILO alleges that Defendants are responsible for these defects, the water issues that have resulted from the defects, and that, as the builder-vendors, Defendants knew or should have known of these defects before the Home was sold to MILO.  (*Id.* ¶¶ 134-146.)  In addition, MILO alleges that Defendants not only failed to disclose these defects to MILO, but also

consistently misrepresented the nature of the defects, the cause of the water issues, and their willingness and ability to fix these problems, both before and after the sale. (*Id.* ¶¶ 39-47, 58-64, 94-95.) MILO also alleges that Procaccino and Elwood, acting as individuals, repeatedly guaranteed that the problems with the Home would be fixed and that the water issues would not keep occurring, all while not revealing that the root cause of these problems was Defendants' use of fraudulent cost-cutting measures while constructing the Home. (*Id.* ¶¶ 46, 53, 66, 76.) MILO claims it relied on the misrepresentations made by Procaccino, Elwood, and 200 CSP in deciding to purchase the Home, and that as a result of the defects in the Home not disclosed by Defendants, the Ferreiras cannot live in the Home, cannot resell it at an adequate price, have had to pay for a temporary residence, and ultimately were forced to purchase another house. (*Id.* ¶¶ 147-50.) Finally, MILO alleges that Defendants have refused to engage in any meaningful negotiation or mediation with MILO to resolve these issues. (*Id.* ¶ 151.)

MILO's Complaint alleges the following claims against all Defendants: Count I – violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") 73 Pa. Stat. and Cons. Stat. Ann. § 201-2(4)(v),(vii), and (xii)(2017); Count II – breach of contract; Count III – breach of implied warranty; Count IV – negligence; Count V – negligent supervision claim; Count VI – civil conspiracy; and Count VII – violation of the Pennsylvania Real Estate Seller Disclosure Law ("RESDL"), 68 Pa. Stat. and Cons. Stat. Ann. § 7303. Procaccino and Elwood seek dismissal of all of MILO's claims. 200 CSP seeks dismissal of Count V, the negligent supervision claim, Count VI, the civil conspiracy claim, and Count VII, the RESDL claim.

### B. Procedural History

On November 4, 2016, MILO filed the original Complaint in this Court. (ECF No. 1.) On January 9, 2017, Defendants filed a Motion to Dismiss Plaintiff's Complaint. (ECF No. 10.) On January 30, 2017, MILO filed an Amended Complaint. (Am. Compl. ECF No. 12.) On March 8, 2017, Defendants filed the instant Motion. (MTD, ECF No. 18.) MILO filed a Response in Opposition to Defendants' Motion on April 7, 2017. (Pl.'s Resp., ECF No. 19.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. A motion under Rule 12(b)(6) tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for

enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

In determining whether dismissal of the complaint is appropriate, courts use a two-part analysis. *Fowler*, 578 F.3d at 210. First, courts separate the factual and legal elements of the claim and accept all of the complaint's well-pleaded facts as true. *Id.* at 210-11. Next, courts determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). Given the nature of the two-part analysis, "'[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

## III. DISCUSSION

### A. Breach of Contract, RESDL, and Breach of Implied Warranty Claims

Elwood and Procaccino contend that MILO's breach of contract claim against them must fail because 200 CSP, the corporation which built and sold the Home, is the only proper defendant in this case. They argue that only MILO and 200 CSP were bound by the contract and that MILO has not alleged sufficient reasons to pierce the corporate veil. MILO contends that it *has* alleged sufficient justification to pierce the corporate veil and to go after Elwood and Procaccino as individuals for their role in the breach of contract. MILO also contends that Defendants violated the RESDL by failing to disclose material defects to the Ferreiras. MILO argues that because Defendants were obligated to comply with the RESDL as provided in the Agreement of Sale, the RESDL violation resulted in a breach of the Agreement.

5

To state a claim for breach of contract, a plaintiff must establish: (1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) resulting damages. *Chemtech Int'l, Inc. v Chemical Injection Techs., Inc.*, 170 F. App'x 805, 807 (3d Cir. 2006) (internal quotation omitted). It is fundamental to the law of contracts that one cannot be liable for a breach of contract unless one is a party to the contract. *Accurso v. Infra-Red Servs., Inc.*, 23 F. Supp. 3d 494, 503 (E.D. Pa. May 28, 2014) (internal quotation omitted). When a corporate agent signs a contract on behalf of the principal corporation, it is the corporate principal that is alone liable for any breach of the contract. *Id.* (citing *Daniel Adams Assoc., Inc. v. Rimbach Pub., Inc.*, 519 A.2s 997, 1000-01 (Pa. Super. Ct. Jan. 9, 1987)).

Here, the contract for the sale of the Home lists the buyer as "David Ferreira or assignee" and the seller as "200 Christian Street Partners." (Am. Compl. Ex. B at 37.) We must therefore determine whether MILO's Complaint alleges facts sufficient to justify the imposition of liability on Elwood and Procaccino as individuals for breach of contract.

      *i.      Piercing the Veil*

A corporation is a legal entity unto itself. *See, e.g.*, *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001). Shareholders, officers, and directors of the corporation do not normally bear personal liability for the acts of the corporation. *Id.* However, when equity requires it, courts may allow plaintiffs to "pierce the veil" of the corporate form and go directly after the individuals who make up the corporation. *Id.*

Courts in Pennsylvania generally will not pierce the corporate veil unless specific and unusual circumstances call for an exception. *Lumax Indus., Inc. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995) (internal quotation omitted). There is no clear test for when the veil may be pierced, but the basic idea is for the court to determine whether the corporation is really "a sham[]

constituting a facade for the operations of the dominant shareholder." *Fletcher-Harlee Corp. v. Szymanski*, 936 A.2d 87, 95-96 (Pa. Super. Ct. 2007) (citations omitted). Factors to consider in veil piercing include, but are not limited to: whether corporate formalities have been observed; whether the dominant shareholders have siphoned off funds from the corporation; whether the funds of the shareholders and corporation have been intermingled; and whether there is gross undercapitalization or insolvency of the corporation. *Id.*; *see also Village at Camelback Prop. Owners Assn. Inc. v. Carr*, 538 A.2d 528 (Pa. Super. Ct. 1988) (holding that a court must consider a recitation of the veil-piercing factors in context of the entire claim's factual allegations, and finding that plaintiff had alleged enough facts to support the plausibility of piercing the veil later in the litigation).

At least one court in the Eastern District of Pennsylvania has held that when a builder-vendor of a home makes personal guarantees to the buyer and holds himself out as the actual developer in charge, the buyer may pierce the corporate veil and impose liability on the builder-vendor as an individual. *Metts. v. FLM Dev. Co., Inc.*, No. 10-7233, 2012 WL 1071218 at *6 (E.D. Pa. Mar. 30, 2012).[2] In *Metts*, plaintiffs contracted with defendants to purchase a home in defendants' residential development. *Id.* at *1-3. The plaintiffs' primary contact during the sale process was the president of the defendant corporation, who repeatedly "held himself out" to the plaintiffs as the developer and the builder of their home. *Id.* at *5-6. Shortly after moving in, the plaintiffs learned that the land was riddled with sinkholes, making the home uninhabitable. *Id.* at *3. The plaintiffs sued the development corporation and its president, and the president moved to dismiss the individual claims against him on the premise that he was shielded from personal

---

[2] *Cf. Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 149-50 (Pa. Super. Ct. 2012) (finding on similar facts that plaintiffs could impose liability on the manager of a corporate builder-vendor based on a "voluntary undertak[ing] of personal responsibility" for the corporate contract, without discussing veil-piercing).

7

liability by the corporate veil. *Id.* at *5-6. The court found that plaintiffs had alleged sufficient facts to plausibly show that the corporation was a sham because the president had allegedly held himself out to plaintiffs as the builder and developer, personally assured them that the sinkholes would be repaired, and had shut down the named defendant corporation and transferred ownership of the development to another of his corporations. *Id.* Therefore, Plaintiff's veil-piercing claim was allowed to proceed. *Id.*

Here, MILO has pled sufficient facts to plausibly support a piercing of the veil at some point in this litigation. The Amended Complaint recites the general veil-piercing factors, alleging gross undercapitalization, siphoning off of profits, lack of any corporate structure or oversight, and the use of the corporate form to shield Elwood and Procaccino from their allegedly fraudulent behavior. (Am. Compl. ¶¶ 106-116). On its own, this list of allegations would be conclusory at best and insufficient to support piercing the corporate veil. However, MILO also alleges a factual context which supports its claim. Like the builder-vendor in *Metts*, MILO alleges that Elwood and Procaccino repeatedly made personal guarantees regarding the quality of the Home and the water infiltration issues. MILO alleges numerous instances where Elwood and Procaccino made first-person misrepresentations to the Ferreiras about the underlying cause of the water leakage. According to the Amended Complaint, the two men held themselves out as the builders of the Home, arranged the sale to the Ferreiras, were the primary contact people whenever there was an issue with the Home, and essentially controlled every aspect of 200 CSP. If true, these facts would support a claim for piercing the corporate veil.

Discovery may show that 200 CSP is not a sham corporation and that Elwood and Procaccino may ultimately avail themselves of the protection of the corporate form. However, at

8

this juncture, MILO has pled sufficient facts to allow its claims against Elwood and Procaccino go forward.

          ii.        *Breach of Contract and RESDL*

MILO alleges that Defendants were aware of material defects in the Home prior to the time of sale and failed to disclose them. MILO argues that this is a violation of the RESDL, and because the Agreement of Sale obligated Defendants to comply with the RESDL, Defendants breached the Agreement. Defendants first contend that Elwood and Procaccino were not parties to the contract and therefore cannot be liable for any breach.[3] Next, Defendants argue that MILO has not pled sufficient facts to state a claim for a RESDL violation. They point to the fact that the water leak was discovered and repaired prior to settlement on the Home and that MILO alleges no other damage to the Home that Defendants failed to disclose.

Under the RESDL, "[a]ny seller who intends to transfer any interest in real property shall disclose to the buyer any material defects with the property known to the seller by completing all applicable items in a property disclosure statement which satisfies the requirements of Section 7304 (relating to disclosure form)." 68 Pa. Stat. and Cons. Stat. Ann. § 7303. A "material defect" is defined as any "[any] problem with a residential real property or any portion of it that would have a significant adverse impact on the value of the property or that involves an unreasonable risk to people on the property." 68 Pa. Stat. and Cons. Stat. Ann. § 7102; *see also Ries v. Curtis*, No. 13-1400, 2014 WL 5364972 at *68 (E.D. Pa. Oct. 22, 2014) (explaining that § 7102 definitions extend to the RESDL). The defect must be related to the actual physical structure of the house, its components, or the accompanying land. *Milliken v. Jacono*, 60 A.3d 133, 138-39 (Pa. Super. Ct. 2012).

---

[3] As discussed above, MILO has pled sufficient facts to reject that argument at this point.

A seller must disclose a known material defect regardless of whether it is the cause of a problem or the problem itself. In *Ries v. Curtis*, plaintiff home-buyers alleged that the defendant sellers had failed to disclose that the kitchen flooded every time it rained because of a sloping outdoor patio. 2014 WL 5364972 at *6-7. The sellers argued that the material defect was not the water seepage, but rather the improper slope of the patio, which they had disclosed to the buyers. *Id.* Because the buyers hadn't alleged that the sellers knew that the improper slope *caused* the flooding, the sellers argued that it hadn't failed to disclose any defect. *Id.* at *7. The court was not persuaded and denied the sellers' motion for summary judgment on the RESDL claim. *Id.* at *8-9. The court explained that the RESDL mandates disclosure of "***any*** material defect" that significantly harms property value if known to the seller. *Id.* (emphasis in original). Whether the sellers knew the cause of a problem was irrelevant – what mattered is that they failed to disclose the fact that the kitchen regularly flooded, *i.e.*, a problem with the property that significantly harmed its value.

MILO has alleged sufficient facts to support its claim that Defendants failed to disclose problems with the Home that significantly harmed its value. MILO's Complaint describes, in detail, numerous defects related to the structure of the Home that it claims have led to water infiltration, fungus, and mold, and which puts the Home at risk of further structural damage. As a result of these problems, MILO contends that the Ferreiras cannot live in the Home, nor can they re-sell it without taking a significant loss. In addition, MILO alleges that these defects are the result of the fraudulent cost-cutting measures that Defendants took while building the Home. Defendants therefore must have known of these defects, and their failure to disclose them to MILO or the Ferreiras at any time is a violation of the RESDL. Defendants respond that MILO knew of the water leak before the Ferreiras moved in and that MILO has not pointed to any other

actual defects in the Home. This ignores the many structural problems that MILO has alleged. Like the defendants in *Ries v. Curtis*, Defendants here are focused on only one part of the problem. Informing the buyers of a water leak and patching it up does not satisfy the RESDL if you fail to disclose that the leak is being caused by underlying shoddy construction. Taking the allegations in the Amended Complaint as true, Defendants failed to disclose a problem with the property–the structural issues and quality of construction–that caused significant harm to the property's value. MILO has alleged sufficient facts to state a claim for a RESDL violation.

Defendants' Motion to Dismiss MILO's RESDL claim against all Defendants will be denied.

### iii. Breach of Contract

Having found that MILO's RESDL claim will not be dismissed, it follows that MILO has alleged sufficient facts to state a claim for breach of contract. MILO has alleged that it entered into a contract with 200 CSP to buy the Home (and, as discussed above, at this time MILO's breach of contract claim will be allowed to proceed against Elwood and Procaccino as well). MILO has also alleged that this contract imposed a duty on Defendants to comply with the RESDL.[4] Since MILO has sufficiently pled a RESDL violation, it has also sufficiently pled that Defendants breached that duty. Finally, MILO has alleged damages resulting from that breach; the loss in the value of the home and the Ferreiras' costs for temporary housing and in finding another place to live.

Defendants' Motion to Dismiss MILO's breach of contract claim against Elwood and Procaccino will be denied.

---

[4] Defendants have not raised the argument that a violation of the RESDL would *not* result in breach of contract.

*iv.     Breach of Implied Warranty of Habitability and Workmanship*

Defendants Elwood and Procaccino similarly contend that MILO's claim against them for breach of implied warranty must fail because 200 CSP was the party bound by the Agreement of Sale, not Elwood or Procaccino. For the same reasons given above, MILO's Complaint has pled sufficient facts at this point in the litigation to allow the individual breach of warranty claims to proceed against Elwood and Procaccino. Defendants also argue that MILO has not pled sufficient facts to allege a breach of implied warranty. MILO responds that it has.

In Pennsylvania, the warranty of habitability is implied by law in every contract for the sale of a new home. *Barker v. Hostetter*, No. 13-5081, 2014 WL 1463419 at *26 (E.D. Pa. Apr. 15, 2014) (citing *Fetzer v. Vishneski*, 582 A.2d 23, 25 (Pa. Super. Ct. 1990), *appeal denied*, 593 A.2d 842 (1991)). When a builder-vendor sells a home that he has built, he impliedly warrants that the home is constructed in a reasonably workmanlike manner and that it is fit for habitation. *Id.* (citing *Elderkin v. Gaster*, 288 A.2d 771, 777 (Pa. 1972)). These warranties exist independent of any representations made by the builder-vendor, and as such, they may only be limited or disclaimed by clear and unambiguous language in a written contract between the builder-vendor and the home buyer. *Id.* (citing *Tyus v. Resta*, 476 A.2d 427, 432-33 (Pa. Super. Ct. 1984)).

Defendants were builder-vendors of a new home sold to MILO. Defendants impliedly warranted that the Home would be constructed in a reasonably workmanlike manner and that it would be fit for habitation. MILO alleges that the Home was uninhabitable due to structural defects, cost-cutting construction methods, water infiltration, fungus, and mold. As a result, MILO alleges that the implied warranty of habitability and workmanship has been breached. Defendants do not contend in their Motion to Dismiss that these warranties were limited or

disclaimed by any language in the Agreement of Sale. MILO has alleged sufficient facts to state a claim for breach of implied warranty.

Defendants' Motion to Dismiss MILO's breach of implied warranty claim against Elwood and Procaccino will be denied.

### B. Unfair Trade Practices and Consumer Protection Law

The UTPCPL is Pennsylvania's consumer protection law, the purpose of which is to protect the public from unfair or deceptive business practices in the conduct of any trade or commerce. *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 151-52. (Pa. Super. Ct. 2012) (citing 73 Pa. Stat. Ann. and Cons. Stat. § 201-3). The law creates a private right of action for "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by of this act[.]" 73 Pa. Stat. Ann. and Cons. Stat. § 201–9.2. The UTPCPL lists 20 specific types of unlawful conduct, and additionally has a catch-all provision banning any "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." *Id.* § 201-2(4)(xxi).

Elwood and Procaccino move to dismiss MILO's UTPCPL claim. They argue that they are improper defendants, as they themselves were not engaged in trade with MILO, but rather it was 200 CSP. They also argue that MILO fails to allege how any representations concerning the Home were made by Elwood and Procaccino as individuals, instead of as officers of 200 CSP. MILO argues that individual liability may be imposed on Elwood and Procaccino under either a piercing of the corporate veil or "participation theory."[5] MILO contends that it has sufficiently

---

[5] Participation theory holds that an officer of a corporation who takes part in the commission of a tort by the corporation may be held personally liable for his conduct. *See, e.g.*,

alleged that Elwood and Procaccino held themselves out as the developers of the Home and made personal guarantees to the Ferreiras regarding the quality of the Home, and therefore it has stated a UTPCPL claim under the catch-all provision.

Both state and federal courts in Pennsylvania hold that a plaintiff can state a UTPCPL catch-all claim by pleading facts sufficient to support a claim for deception *or* fraud. *See Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 415-19 (E.D. Pa. 2016) (analyzing a deception claim under the UTPCPL catch-all provision). MILO can bring either type of claim, and appears to have pled both. Moreover, because deception claims need only meet the normal pleading standard set forth under Rule 8(a), MILO's claim is not subject to the particularity standard generally required of fraud claims. *Id.*

The elements of a deception claim are: (1) a deceptive act, meaning conduct that is likely to deceive a consumer acting reasonably under similar circumstances; (2) justifiable reliance based on the defendants' misrepresentation or deceptive conduct; and (3) an ascertainable loss caused by this justifiable reliance. *Id.* at 419 (citations omitted).

We are satisfied that MILO has alleged sufficient facts to state a UTPCPL deception claim under the catch-all provision. First, as discussed above, the Amended Complaint contains sufficient factual allegations to plausibly support a piercing of the corporate veil to impose liability on Elwood and Procaccino as individuals. As such, Defendants' arguments about not being engaged in trade or making representations as individuals fail. Further, MILO has alleged many misrepresentations made by Elwood and Procaccino as to the quality of the Home, construction methods that were to be used, and repairs that were supposed to have been made.

---

*Accurso v. Infra-Red Servs., Inc.*, 23 F. Supp. 3d 494, 506-08 (E.D. Pa. 2014) (discussing the Third Circuit's handling of participation theory).

MILO has alleged that it relied on these deceptive statements when deciding to purchase and stay in the Home, and it has alleged significant economic loss as a result.

Accordingly, Defendants' Motion to Dismiss MILO's UTPCPL claim against Elwood and Procaccino will be denied.

### C. Negligence and Negligent Supervision

*i. Negligence Claim against Elwood and Procaccino*

Defendants seek to dismiss MILO's negligence claim against Elwood and Procaccino, but not against 200 CSP. Elwood and Procaccino argue that MILO's negligence claim against them should be dismissed because, as individual corporate officers of 200 CSP, Elwood and Procaccino owed no particular duty of care to MILO. As such, Elwood and Procaccino argue that MILO has failed to plead a valid negligence claim. MILO responds that, under both the veil-piercing theory and the participation theory, Elwood and Procaccino did owe a duty to MILO, and that they breached that duty by building a home that was defective and dangerous, causing substantial damages to MILO and the Ferreiras.

To state a negligence claim under Pennsylvania law, a plaintiff must plead (1) a legally recognized duty or obligation of the defendant, (2) the breach of that duty, and (3) a causal connection between the breach and (4) the plaintiff's damages. *See, e.g.*, *Shuker v. Smith & Nephew, PLC*, No. 16-3785, __ F.3d __, 2018 WL 1096185, at *11 (3d Cir. Mar. 1, 2018) (citing *Green v. Pa. Hosp.*, 123 A.3d 310, 315-16 (Pa. 2015)).

MILO has alleged sufficient facts to state a negligence claim against Elwood, Procaccino, and 200 CSP. The only element of a negligence claim that Defendants argue is missing here is that of duty. However, as discussed above, MILO has pled sufficient facts to plausibly support a

15

piercing of the corporate veil.[6] Therefore, at least at this stage of the litigation, Elwood and Procaccino cannot shield themselves with the corporate form of 200 CSP and claim that they did not owe MILO a duty of reasonable care in building and selling the Home. Moreover, MILO has alleged that Elwood and Procaccino made personal representations as to the quality of the Home, the construction methods used by 200 CSP, and any repairs that were to be made. Under those circumstances, they owed a duty to MILO to build a house free from defects and safety hazards. As MILO alleges in the Amended Complaint, Defendants breached that duty by building the Home in a defective manner, causing Plaintiff to suffer damages.

Accordingly, Defendants' Motion to Dismiss MILO's negligence claim against Elwood and Procaccino will be denied.

      *ii.     Negligent Supervision*

Defendants argue that MILO's negligent supervision claim against all Defendants must be dismissed. Similar to their arguments above, Defendants argue that Elwood and Procaccino owed no individual duty to MILO. Defendants also argue that MILO has failed to allege that 200 CSP knew or should have known of the need to exercise control of its employees. Finally, Defendants argue that MILO's allegations that 200 CSP failed to properly train and supervise its employees are conclusory. MILO responds that it has properly alleged underlying individual negligence claims against Elwood and Procaccino, and that it has specifically pled that Elwood and Procaccino made explicit representations as to the quality of the Home, were in sole control

---

[6] Plaintiffs may also be able to proceed with a negligence claim against Elwood and Procaccino under a participation theory. However, because we find at this time that MILO has pled sufficient facts to support a veil-piercing theory, we do not analyze MILO's participation theory argument. *See Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 232-33 (E.D. Pa. 2012) (noting how an individual corporate officer could be held personally liable under a valid veil-piercing theory for conduct done by the corporation, or alternatively under a participation theory if he had been an actual participant in the commission of the tort).

16

of 200 CSP, and that all Defendants were therefore fully responsible for the construction of the Home, including the work of any employees it hired to perform that construction.

In order to state a claim for negligent hiring or supervision, a plaintiff must allege facts that establish the four elements of common law negligence: duty, breach, causation, and damages. *Young v. Temple Univ. Campus Safety Servs.*, No. 15-2892, 2015 WL 6503386 (E.D. Pa. Oct. 28, 2015) (citing *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 487-88 (3d Cir. 2013)). The complaint must also allege that the employer knew or should have known of the need to exercise control of its employee. *Id.* (citations omitted).

MILO has alleged sufficient facts to state a claim for negligent supervision against Elwood, Procaccino, and 200 CSP. Again, as discussed above, MILO has pled sufficient facts to plausibly support an underlying claim of negligence against Defendants Elwood and Procaccino. Further, MILO has specifically alleged that Elwood and Procaccino, as personal representatives of 200 CSP (which MILO alleges is essentially their alter ego), knew or should have known of the need to exercise control of its employees. MILO has alleged that Defendants made specific representations as to the construction of the Home, including the design, architectural layout, and quality of the materials and building methods, and yet the construction of the Home deviated from that design and layout and suffered from numerous defects and cost-cutting construction methods. As the parties responsible for building the Home and hiring any sub-contractors to accomplish that task, any deviation from the plans, use of cost-cutting measures, and material defects in the Home caused by Defendants' employees either were known or should have been known by Defendants.

Accordingly, Defendants' Motion to Dismiss MILO's negligent supervision claim against Elwood, Procaccino, and 200 CSP will be denied.

### D. Civil Conspiracy

In order state a claim for civil conspiracy, a plaintiff must allege "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Goldstein v. Phillip Morris, Inc.*, 854 A.2d 585, 590 (Pa. Super. Ct. 2004) (quoting *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. Ct. 2000)). For the conspiracy charge to lie, there must be a viable underlying substantive claim. *Accurso*, 23 F. Supp. 3d at 512. In Pennsylvania, that means a plaintiff charging civil conspiracy must plead a separate underlying intentional or criminal act that can support a civil conspiracy claim. *Id.* (quoting *Goldstein*, 854 A.2d at 660).

Elwood and Procaccino contend that they could not have been part of any conspiracy, as they were acting only as partners and officers of 200 CSP and not in an individual capacity. 200 CSP argues similarly that, as the only actor involved in building and selling the Home to MILO, it could not have conspired with itself, and so MILO has failed to plead any overt acts that would establish a conspiracy. MILO argues that it has alleged sufficient facts throughout the Amended Complaint to establish that Elwood and Procaccino were acting for their own individual benefit and were able to conspire with each other and with their own corporation.

Defendants' arguments here are based on what is known as the "intra-corporate conspiracy" doctrine. *See Cannon v. City and Cty. of Philadelphia*, No. 14-5388, 2014 WL 7399037 at *8-10 (E.D. Pa. Dec. 30, 2014) (discussing the scope of this doctrine in Pennsylvania and predicting that the Pennsylvania Supreme Court would find that the doctrine applies with a limited exception for when agents of the corporation conspire with each other outside the scope of their employment). MILO argues that Elwood and Procaccino may be considered to have

conspired as individuals rather than as corporate agents under either the scope-of-employment exception to the intra-corporate conspiracy doctrine or, more simply, because the corporate veil has been pierced. *Id.*; *cf. Reese v. Pook & Pook, LLC.*, 158 F. Supp. 3d 271, 292-95 (E.D. Pa. 2016) (agreeing with the court's analysis in *Cannon* and applying the exception to a conspirator-agent of the corporation acting in his individual capacity).

We are satisfied that MILO has alleged sufficient facts to state a claim for civil conspiracy. As discussed above, MILO has alleged sufficient facts at this juncture to support claims which rely on a piercing of the corporate veil. Therefore, Elwood and Procaccino may be considered to have acted as individuals, not merely as corporate agents of 200 CSP. Further, MILO has alleged that Elwood and Procaccino acted with a common purpose to defraud MILO by making false representations as to the quality of the Home and its repairs and by engaging in deceptive cost-cutting measures during construction of the Home. MILO alleges that these overt acts were done in furtherance of the underlying unlawful act of violating the UTPCPL. Finally, MILO alleges that it suffered significant economic damages as a result of this conspiracy.

Accordingly, Defendants' Motion to Dismiss MILO's civil conspiracy claim against Elwood, Procaccino, and 200 CSP will be denied.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be denied as to all claims. An appropriate Order follows.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**