IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MILO, LLC                            :
                    *Plaintiff*,     :
                                     :     CIVIL ACTION
          v.                         :
                                     :     NO. 16-5759
VIRGIL PROCACCINO, ET AL.            :
                                     :
                    *Defendants*.    :

———————————————————————————————————

VIRGIL PROCACCINO, ET AL.            :
                                     :
          *Third-Party Plaintiffs*,  :
                                     :
          v.                         :
                                     :
AB CONSTRUCTION, LLC, ET AL.         :
                                     :
          *Third-Party Defendants*.  :

## <u>MEMORANDUM</u>

**SURRICK, J.**                                      **APRIL 13, 2020**

  Presently before the Court is Jeld-Wen, Inc. and Tague Lumber's Motion to Dismiss the

Joinder Complaint Pursuant to Rule 12(b)(6). (Mot. to Dismiss, ECF No. 30.) Milo, LLC

("Plaintiff") initiated this lawsuit against the contractors who built a home in an allegedly

negligent manner. The contractors ("Third-Party Plaintiffs") then filed a Joinder Complaint,

joining eight of their subcontractors and product suppliers as defendants ("Third-Party

Defendants"), including Jeld-Wen, Inc. and Tague Lumber ("Movants"). The Joinder Complaint

makes claims for indemnification, contribution, negligence, strict products liability, and breach

of implied warranty.  (*Milo* Joinder Compl., ECF No. 23.)[1]  Movants seek to dismiss the Joinder

Complaint on a number of grounds that amount to failure to state a claim.  For the reasons that

follow, we will deny the Motion.

## I.     BACKGROUND

Third-Party Plaintiffs constructed two homes in Philadelphia.  One of the houses is

located at 501A South 12th Street and the other is located at 507 South 12th Street.  The owners of

each of these homes allege that the homes were defectively constructed.  Each owner has brought

a lawsuit against Third-Party Plaintiffs for damages regarding the defects.  On November 4,

2016, the owner of the home located at 501A South 12th Street filed a complaint against Third-

Party Plaintiffs in this Court.  *See* Compl., *Milo, LLC v. Procaccino*, No. 16-5759 (E.D. Pa. Nov.

4, 2016) (ECF No. 1) (the "*Milo* Action").[2]  On September 21, 2017, the owners of the home

located at 507 South 12th Street filed a complaint against Third-Party Plaintiffs and the Harman

Deutsch Corporation in the Court of Common Pleas of Philadelphia County.  *See* Compl.,

*Zachary Klehr v. Procaccino*, No. 170902547 (Ct. Com. Pl., Phila. Cty., Pa. Sep. 21, 2017) (the

"*Klehr* Action").

In each action, Third-Party Plaintiffs filed third-party complaints, styled "joinder

complaints," impleading their subcontractors and product suppliers, including Movants Jeld-

Wen, Inc. and Tague Lumber.  (*Milo* Joinder Compl., ECF No. 23; *Klehr* Joinder Compl., Mot.

to Dismiss Ex. E.)  In both joinder complaints, Third-Party Plaintiffs allege that Jeld-Wen, Inc.

manufactured defective windows and sold them to Tague Lumber.  (*Milo* Joinder Compl. ¶ 25;

---

[1] The other parties joined by the Joinder Complaint were AB Construction LLC, Duggan Excavation, E&A Drywall Corporation, High End Design Inc., Maxi-Tech Inc., Red Lion Insulation, and Stanley Stephens Co., Inc..

[2] The *Milo* Plaintiff amended its Complaint on January 30, 2017.  (*Milo* Am. Compl., ECF No. 12.)

*Klehr* Joinder Compl. ¶ 15.)  Tague Lumber then supplied these windows and other defective

"building materials" to Third-Party Plaintiffs.  (*Milo* Joinder Compl. ¶ 28; *Klehr* Joinder Compl.

¶ 21.)  Third-Party Plaintiffs bring claims against all Third-Party Defendants for common law

indemnification, contribution, negligence, and breach of implied warranty of fitness for ordinary

purpose.  Third-Party Plaintiffs also bring a claim of strict products liability against Jeld-Wen,

Inc. alone.

### A.  The *Klehr* Action

As noted above, the *Klehr* Action was filed in state court.  After Third-Party Plaintiffs

joined Third-Party Defendants in that action, Jeld-Wen, Inc. objected to the joinder complaint.

(Mot. to Dismiss Ex. F.)  By order dated August 16, 2018, Third-Party Plaintiffs' claims against

Jeld-Wen, Inc. for negligence, strict products liability, and breach of implied warranty were

dismissed with prejudice.  (8/16/18 Order, Mot. to Dismiss Ex. G.)  The court allowed Third-

Party Plaintiffs twenty days to amend the remainder of the joinder complaint to eliminate

"scandalous and impertinent material."  (*Id.*)  The order was not accompanied by an opinion or

memorandum.  On September 5, 2018, Third-Party Plaintiffs filed an amended joinder

complaint.  (*See* 9/5/18 Docket entry, *Klehr* Action.)  Jeld-Wen, Inc. and Tague Lumber objected

to the amended joinder complaint.  (*See* 9/25/18 & 11/6/18 Docket entries, *Klehr* Action.)  By

orders dated December 19, 2018, all claims against Jeld-Wen, Inc. and Tague Lumber in the

amended joinder complaint were dismissed with prejudice.  (Movants' Supp. Disclosure Exs. A

& B, ECF No. 36.)  Those orders were not accompanied by opinions or memoranda.  Third-Party

Plaintiffs moved for reconsideration.  (*See* 1/9/19, 3/7/19, & 6/4/19 Docket entries, *Klehr*

Action.)  By orders dated January 16, 2019, April 9, 2019, and July 8, 2019, the court affirmed

its dismissal of all claims against Jeld-Wen, Inc. and Tague Lumber with prejudice.  (*See*

1/16/19, 4/9/19, & 7/8/19 Docket entries, *Klehr* Action.)  None of these court orders included explanations nor were they accompanied by opinions or memoranda.

### B.    The *Milo* Action

As noted above, the *Milo* Action was filed in this Court and is presently before us.  On October 8, 2018, Movants filed the instant Motion to Dismiss the Joinder Complaint Pursuant to Rule 12(b)(6).  (Mot. to Dismiss.)  On October 29, 2018, Third-Party Plaintiffs filed a Response in opposition to the Motion.  (Third-Party Plfs.' Resp., ECF No. 31.)  On November 5, 2018, Movants filed a Reply in support of their Motion.  (Movants' Reply, ECF No. 32.)  On December 20, 2018, Movants filed a Supplemental Disclosure of Counsel in support of their Motion, updating the Court as to the dismissal of Movants in the *Klehr* Action.  (Movants' Supp. Disclosure.)[3]  On April 18, 2019, Third-Party Plaintiffs filed a Surreply in opposition to the Motion.  (Third-Party Plfs.' Surreply, ECF No. 43.)  On April 23, 2019, Movants filed a Supplemental Brief in response to Third-Party Plaintiffs' Surreply.  (Movants' Supp. Brief, ECF No. 47.)

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  A motion under Rule 12(b)(6) tests the sufficiency of the complaint against the pleading requirements of Rule 8(a).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

---

[3] Two other Third-Party Defendants, Red Lion Insulation and Stanley Stephens Co., Inc., have also filed motions to dismiss the Joinder Complaint.  (*See* ECF Nos. 50 & 61.)  We address Red Lion Insulation and Stanley Stephens Co., Inc.'s motions to dismiss in separate memoranda.

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). In deciding a motion to dismiss under Rule 12(b)(6), all material allegations pleaded and all reasonable inferences that can be drawn from them must be accepted as true and construed in a light most favorable to the non-moving party. *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990).

In determining whether dismissal of the complaint is appropriate, courts use a two-part analysis. *Fowler*, 578 F.3d at 210. First, courts separate the factual and legal elements of the claim and accept all of the complaint's well-pleaded facts as true. *Id.* at 210-11. Next, courts determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). Given the nature of the two-part analysis, "'[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience

and common sense.'" *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

## III.    DISCUSSION

Movants argue that the Joinder Complaint fails to state a claim.  Specifically, they argue that:  the negligence, strict products liability, and breach of implied warranty claims are barred by the doctrines of claim preclusion (res judicata) and issue preclusion (collateral estoppel); the negligence and strict products liability claims are barred by the economic loss doctrine and the gist of the action doctrine; the implied warranty of liability claim is barred because of the existence of a disclaimer of implied warranties; Third-Party Plaintiffs have no right to contribution and indemnification; the Joinder Complaint is not pleaded with the requisite specificity; and Third-Party Plaintiffs have improperly shifted the burden to Movants to prove their absence of liability.  We address each argument in turn.

### A.    Claim Preclusion

First, Movants argue that, because the state court dismissed Third-Party Plaintiffs' claims for negligence, strict products liability, and breach of implied warranty, the doctrines of claim and issue preclusion bar Third-Party Plaintiffs from litigating those claims in this Court.  We disagree.

For claim preclusion to apply, three elements must be present:  "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action."  *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (quoting *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991)).  The *Klehr* Action and the *Milo* Action do not involve the same causes of action because the essential underlying facts are not the same.  Under Pennsylvania law, the doctrine of res judicata requires that the two

causes of action possess the following four common elements: (1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of the parties; (4) identity of the capacity of the parties. *Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir. 1988) (citing *Dempsey v. Cessna Aircraft Co.*, 653 A.2d 679, 681 (1995)).

The most important and material difference between the the *Klehr* Action and the *Milo* Action is also the most obvious: the claims regard completely different homes and homeowners. The acts complained of are different—the manufacture and sale of windows for the *Klehr* home versus the *Milo* home—and the witnesses and trial documents will understandably be different, since they involve purchase and use of Movants' windows in different places and at different times.

"Beyond precluding just those claims that were 'actually litigated' in the first adjudication, res judicata also precludes those 'claims which could have been litigated during the first proceeding if they were part of the same cause of action.'" *Robinson v. Fye*, 192 A.3d 1225, 1231 (Pa. Commw. Ct. 2018) (quoting *Balent v. City of Wilkes-Barre*, 542 Pa. 555, 669 A.2d 309, 313 (Pa. 1995)). The *Milo* Action had already begun when Third-Party Plaintiffs joined Movants in the *Klehr* Action. We cannot expect Third-Party Plaintiffs to have raised issues with respect to the *Milo* home during the *Klehr* Action when a more appropriate setting was available: the *Milo* Action. Therefore, Third-Party Plaintiffs' claims for negligence, breach of implied warranty, and strict products liability are not precluded.

### B.     Issue Preclusion

Issue preclusion does not apply because the issues of Movants' liability for negligence, strict product liability, and breach of implied warranty in the *Klehr* Action were not the same as the issues presented here, and we have no way to determine whether the dismissal in the *Klehr*

Action occurred on the merits. Under Pennsylvania law, a party is precluded from re-litigating the same issues that were decided in an earlier suit if those issues were necessary to a final judgment on the merits, and if the party against whom issue preclusion is asserted was a party, or was in privity with a party, to the prior action and had a full and fair opportunity to litigate the issue in question. *Balent*, 669 A.2d at 313.

Here, the issues in the *Klehr* Action and the *Milo* Action are different. The issues faced by the court in the *Klehr* Action involved Movants' actions with respect to the *Klehr* plaintiffs and their home. The issues in this case revolve around Movants' actions with respect to the *Milo* Plaintiff and its home. As with the claim preclusion analysis, these facts are essential and render the cases non-analogous.

Even if the issues were the same, we have no way to determine whether the issues in the *Klehr* Action were decided on the merits. Although the parties in the *Klehr* Action raised and fully briefed the issues of Movants' negligence, strict product liability, and breach of implied warranty, and the claims were subsequently dismissed, the dismissal occurred without any explanation. This Court is unable to determine if the issues were actually determined on the merits or if dismissal occurred on other grounds in the *Klehr* Action. *See, e.g.*, *Griffin v. Cent. Sprinkler Corp.*, 823 A.2d 191, 195 (Pa. Super. Ct. 2003) (declining to apply doctrine of issue preclusion where prior order "[did] not purport to answer" issue in subsequent action). For these reasons, the doctrine of issue preclusion does not preclude the issues in this case.

### C. Disclaimers of Implied Warranties

Movants also argue that Third-Party Plaintiffs cannot bring a claim for breach of implied warranty of fitness for a particular purpose because Movants disclaimed all implied warranties on the products they sold to Third-Party Plaintiffs. In support of their argument, Movants

attached two written warranties to their Motion. The first exhibit is a Jeld-Wen, Inc. Product Warranty, which states that Jeld-Wen, Inc.'s window and patio door products come with a twenty-year warranty for defects in "material or workmanship." (Jeld-Wen, Inc. Warranty, Mot. to Dismiss Ex. C.) The third page of this warranty contains a boxed and bolded section entitled "Important Legal Information." (*Id.*) This box contains, among other things, the following text: "We make no other warranty or guarantee, either express or implied, including implied warranties of merchantability and fitness for a particular purpose to the original purchaser or to any subsequent user of a product, except as expressly contained herein." (*Id.*) The top of each page of the Jeld-Wen, Inc. Product Warranty states "Effective July 1, 2010 to January 31, 2014." (*Id.*)

The second exhibit is an invoice, dated June 18, 2013, from Tague Lumber for the sale of windows to Third-Party Plaintiffs, with the shipping location designated as "501-507 S. 12th Street, Philadelphia, PA 19147." (Tague Lumber Warranty, Mot. to Dismiss Ex. D.) The bottom of the invoice contains a paragraph in smaller font than the rest of the invoice, which states various terms and conditions and ends with "[s]ee reverse side for additional terms and conditions." (*Id.*) The next page of the invoice includes a series of paragraphs in the same size font as the paragraph on the first page, with each paragraph's title in all caps, centered, and bolded above the corresponding text. (*Id.*) One of the paragraphs is titled "Warranty" and states the following:

> Seller agrees that any merchandise delivered hereunder found to be defective in material or workmanship, or not within acceptable lumber grading rules, will be repaired or replaced by the Seller without additional charge for the merchandise. This warranty is made in lieu of any other warranties or conditions including merchantability or fitness for a particular purpose. The remedies under this warranty are exclusive and by accepting this merchandise the Buyer agrees to these conditions and waives any other warranties, conditions, expressed or implied.

(*Id.*)

When assessing a motion to dismiss a complaint, courts typically only review "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citation omitted). However, courts may also review "a document *integral to or explicitly relied* upon in the complaint." *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)) (emphasis in original). "The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated where plaintiff has actual notice and has relied upon these documents in framing the complaint." *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426) (alterations omitted).

Here, neither warranty disclaiming the implied warranty of fitness for a particular purpose attached to the Motion to Dismiss is integral to or explicitly relied upon in the Joinder Complaint. The Joinder Complaint does not contain allegations about these warranties, and these warranties are not attached to the Joinder Complaint. Rather, the Joinder Complaint alleges that "[Movants'] products are provided with implied warranties of merchantability and fitness for a particular purpose." (*Milo* Joinder Compl. ¶ 46.) Similarly, Plaintiff in the *Milo* action alleges that the windows "were under warranty by the manufacturer." (*Milo* Am. Compl. ¶ 77.) Third-Party Plaintiffs do attach to the Joinder Complaint a receipt and invoice from a transaction with Jeld-Wen, Inc. and Tague Lumber, dated February 28, 2013, and a receipt and invoice from a transaction with Tague Lumber, dated May 7, 2013. (*Milo* Joinder Compl. Ex. E). However, the February 28, 2013 and May 7, 2013 invoices attached to the Joinder Complaint are not the same as the June 18, 2013 invoice attached to the Motion that contains the Tague Lumber Warranty. Also, neither of the invoices attached to the Joinder Complaint

references any terms or conditions that accompany the sale. Therefore, the Joinder Complaint's allegations and exhibits, which we are bound to accept as true, do not support the argument that the warranties that Movants attached to their Motion constituted the terms and conditions of the parties' transactions. Therefore, we will not consider these warranties in our assessment of the Joinder Complaint.

### D. Economic Loss Doctrine

Next, Movants argue that the economic loss doctrine bars Third-Party Plaintiffs' negligence and strict products liability claims. The economic loss doctrine provides that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." *Excavation Techs., Inc. v. Columbia Gas Co. of Pa.*, 985 A.2d 840, 841 n.3 (Pa. 2009) (internal quotation omitted). In the context of a product liability claim, the doctrine bars recovery in tort when a defective product fails and only causes damage to itself. *See East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871 (1986) ("When a product injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong."). When a defective product only damages itself, "contract theories such as breach of warranty are specifically aimed at and perfectly suited to providing complete redress in cases involving such economic losses." *Rem Coal Co. v. Clark Equip. Co.*, 563 A.2d 128, 129 (Pa. Super. Ct. 1989). However, a plaintiff may recover in tort when a defective product "causes personal injury or damage to other property because this is deemed to be the best way to allocate the risk of unsafe products and to encourage safer manufacture and design." *Id*. Thus, the economic loss doctrine is aimed at "prohibit[ing] plaintiffs from recovering in tort economic losses to which their entitlement flows only from a

contract." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002) (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995)).

The economic loss doctrine does not preclude Third-Party Plaintiffs' claims at this stage because Movants' actions may have caused personal injury and additional property damage to Plaintiff in the *Milo* Action, for which Third-Party Plaintiffs may be held responsible. *See Rem Coal*, 563 A.2d at 129. The damages in the *Milo* Action have yet to be ascertained, but the *Milo* Amended Complaint alleges that the family residing at the home was forced to relocate because of the safety hazards in the home, and the safety hazards may have caused respiratory problems in their newborn child. (*Milo* Am. Compl. ¶¶ 10, 71, 100.) Plaintiff in the *Milo* Action owns the home for the benefit of this family's children. (*Id*. ¶¶ 3, 12, 22, 24.) The *Milo* Amended Complaint also states that there was water damage to the home, including mushroom growth and the presence of mold. (*Id.* ¶¶ 50-57, 75-77, 92, 102.)

Movants argue that Third-Party Plaintiffs have no standing to claim the damages of the *Milo* Plaintiff. However, Third-Party Plaintiffs do not seek to recover for the damages of the *Milo* Plaintiff. Rather, Third-Party Plaintiffs are required to prove that Movants' negligence caused non-economic damages to the *Milo* Plaintiff in order for Third-Party Plaintiffs to seek indemnification from Movants. *See Waynesborough Country Club of Chester Cty. v. Diedrich Niles Bolton Architects, Inc.*, No. 07-155, 2008 U.S. Dist. LEXIS 18746, at *21-22 (E.D. Pa. Mar. 11, 2008) (allowing architectural firm's allegation of negligence against general contractor to survive because underlying building owner's losses were not purely economic and included property damage); *Longport Ocean Plaza Condo., Inc. v. Robert Cato & Assocs., Inc.*, No. 00-2231, 2002 U.S. Dist. LEXIS 4609, *13 (E.D. Pa. Mar. 18, 2002) ("In order for [third-party plaintiff]'s claims against [third-party defendant] to be barred by the economic loss doctrine,

however, the *plaintiff* must also seek damages only for an alleged defective product itself, as opposed to damage to 'other property.'" (emphasis added)).

Movants also argue that, when a product such as a window is integrated into a home, and a homeowner subsequently purchases the entire home, the home becomes the product for which the plaintiff bargained. Thus, Movants argue, if the windows caused damage to other parts of the home, they still only damaged the product itself and not other property. We note that Pennsylvania appellate courts offer little guidance in the way of defining "the product" for the purpose of applying the economic loss doctrine, and federal courts seem to be in disagreement. *Compare Sea-Land Serv. v. GE*, 134 F.3d 149, 156 (3d Cir. 1998) (holding that "the product" is the object for which plaintiff bargained) *with 2-J Corp. v. Tice*, 126 F.3d 539, 543 (3d Cir. 1997) ("'[T]he product' is no more and no less than whatever the manufacturer placed in the stream of commerce . . ." (citing *Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875, 879 (1997)). Such a disagreement makes a substantial difference in our approach to this case, where the item placed into commerce was the window itself, but the product ultimately purchased by the *Milo* Plaintiff was a completed home.

However, we need not resolve the disagreement at this stage because the Third Circuit also predicted in *2-J Corp.* that the Pennsylvania Supreme Court would hold that personalty within a prefabricated building is not part of the building for the purpose of bringing a tort claim against the builder or a manufacturer of a component of the building. *See 2-J Corp.*, 126 F.3d at 544 (predicting that Pennsylvania Supreme Court would find that economic loss doctrine does not preclude owner of warehouse from bringing tort claim against manufacturer of warehouse for inventory damaged as result of faulty structure). Other courts have followed *2-J Corp.*'s lead. *See Am. Stores Props., Inc. v. Spotts, Stevens & McCoy, Inc.*, 678 F. Supp. 2d 328, 336-37 (E.D.

Pa. 2009) (distinguishing case from *2-J Corp.* on grounds that no inventory was damaged, and holding that economic loss doctrine therefore applies to bar tort claim); *Longport Ocean Plaza Condo., Inc.*, 2002 U.S. Dist. LEXIS 4609, at *19 (same). Here, we can infer from the allegations in the underlying *Milo* Amended Complaint that the damages include mold and other water damage to unknown items within the home. Importantly, the damages may also encompass personal injuries to the family. Therefore, the economic loss doctrine does not bar Third-Party Plaintiffs from bringing tort claims.

### E.     Gist of the Action Doctrine

Next, Movants argue that the gist of the action doctrine bars Third-Party Plaintiffs' negligence and strict products liability claims. Specifically, they argue that Third-Party Plaintiffs' negligence and strict products liability claims should be dismissed because the duties allegedly breached are not those imposed by law but by the transaction between the parties.

The gist of the action doctrine is "designed to maintain the conceptual distinction between breach of contract claims and tort claims by precluding plaintiffs from recasting ordinary breach of contract claims into tort claims." *Williams v. Hilton Grp. PLC*, 93 F. App'x 384, 386 (3d Cir. 2004) (citing *eToll, Inc. v. Elias/Savion Adver., Inc*., 811 A.2d 10, 14 (Pa. Super. Ct. 2002)). Determining whether the gist of the action doctrine applies "call[s] for a fact-intensive judgment as to the true nature of a claim." *Id*. "To evaluate whether the gist of the action doctrine applies, a court must identify the duty breached, because 'the nature of the duty alleged to have been breached . . . [is] the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract.'" *Downs v. Andrews*, 639 F. App'x 816, 819 (3d Cir. 2016) (quoting *Bruno v. Erie Ins. Co*., 106 A.3d 48, 68 (Pa. 2014)). "If . . . the facts establish that the claim involves the defendant's violation of a broader social duty owed to all

individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort." *Bruno*, 106 A.3d at 68 (citations omitted).

The gist of the action doctrine does not bar Third-Party Plaintiffs' negligence and strict product liability claims against Movants because the duties that Movants allegedly breached are imposed by law rather than by contract. The Joinder Complaint states that Movants were negligent because they failed to comply with industry standards and applicable building codes, and to perform their work in a reasonable and workmanlike manner; and that Movant Jeld-Wen, Inc. is specifically liable for selling a defective product that caused harm to the *Milo* Plaintiff. (*Milo* Joinder Compl. ¶¶ 39, 54-57.) The Pennsylvania Supreme Court explicitly allows tort claims, despite the existence of a contract between parties, "[i]f the claim arises indirectly from the breach of a 'separate "collateral" duty to perform a contractual obligation with skill and diligence.'" *Endless Summer Prods., LLC v. Mirkin*, No. 15-6097, 2016 U.S. Dist. LEXIS 25736, at *6 (E.D. Pa. Mar. 2, 2016) (citing *Bruno*, 106 A.3d at 63). Here, the claims against Movants do not relate to Movants' failure to perform its contractual obligations, but to Movants' failure to perform its contractual obligations with skill and diligence. Therefore, Third-Party Plaintiffs' tort allegations concern breach of a general social duty, not a breach of a duty created by any contract between the parties.

> **F.      Contribution**

Movants argue that Third-Party Plaintiffs have not stated a claim for contribution because they have not alleged that Movants are joint tortfeasors with them.

Pennsylvania's Uniform Contribution Among Tortfeasors Act, ("UCATA"), 42 Pa. Cons. Stat. Ann. § 8321 *et seq.* states that there is a right of contribution among joint tortfeasors. 42 Pa. Cons. Stat. Ann. § 8324. Parties are joint tortfeasors if they are "jointly or severally liable in

tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them." 42 Pa. Cons. Stat. Ann. § 8322. In determining whether parties are joint tortfeasors, courts consider:

> the identity of a cause of action against each of two or more defendants; the existence of a common, or like duty; whether the same evidence will support an action against each; the single, indivisible nature of the injury to the plaintiffs; identity of the facts as to time, place or result; whether the injury is direct and immediate, rather than consequential; [and] responsibility of the defendants for the same *injuria* as distinguished from the *damnum*.

*Morris v. Lenihan*, 192 F.R.D. 484, 490 (E.D. Pa. 2000) (quoting *Smith v. Pulcinella*, 656 A.2d 494, 496 (Pa. Super. Ct. 1995)).

Here, the *Milo* Plaintiff brings a negligence claim against Third-Party Plaintiffs for failing to "ensure that the construction of the Home was completed in such a way that conformed to applicable building codes . . . and did not present a danger to the [family]." (*Milo* Am. Compl. ¶ 197.) In their Joinder Complaint, Third-Party Plaintiffs allege that "all construction materials were supplied by the Joinder Defendants [including Movants]." (*Milo* Joinder Compl. ¶ 4.) Specifically, "[Movant] Jeld-Wen, Inc. . . . manufactured windows and sold them to [Movant] Tague Lumber Company that were used in the construction of the Home," (*id.* ¶ 25,) and "[Movant] Tague Lumber . . . sold defective windows and building materials that were used in the construction of the Home." (*Id.* ¶ 28.) Movants were negligent for, among other things, "[f]ailing to comply with industry standards"; "[f]ailing to comply with applicable building codes"; "[f]ailing to perform their work in a reasonable and workmanlike manner"; and "[u]tilizing defective products in the installation of components . . . [in] the Home." (*Id.* ¶ 39.) Finally, Third-Party Plaintiffs allege that, "should [Plaintiff] recover damages in this action, the joinder defendants are liable over to [Third-Party Plaintiffs] for contribution of any monies that [Third-Party Plaintiffs] may be found liable or responsible to [Plaintiff]." (*Id.* ¶ 35.) These

allegations, taken as true, raise a plausible inference that Third-Party Plaintiffs and Movants had similar duties toward Plaintiff— to construct a home with safe windows and to provide safe windows, respectively—and that Plaintiff suffered a single injury—water damage from defective windows—that is indivisible as between the parties. Therefore, it is plausible that Movants are joint tortfeasors with Third-Party Plaintiffs, should Third-Party Plaintiffs be found liable for negligently constructing the home. *Cf. Waynesborough Country Club*, 2008 U.S. Dist. LEXIS 18746, at *18-19 (allowing contribution claim by architecture firm against general contractor to proceed based on similar allegations).

Movants contend that they cannot be jointly liable with Third-Party Plaintiffs because none of the *Milo* Plaintiff's claims can be extended to Movants. For example, Movants argue that they could not have ensured that the home was constructed according to applicable building codes because they were not involved in the construction of the home but merely manufactured and supplied windows used in the home. However, "[t]he doctrine of contribution is based on equity. Therefore, the [UCATA] must be examined with equity in mind." *Svetz v. Land Tool Co.*, 513 A.2d 403, 407 (Pa. Super. Ct. 1986) (citation omitted). The plain language of the UCATA states that it is (1) the injury to the plaintiff and (2) the tortfeasors' relationship, *not* the specific claim brought against the tortfeasors, that makes defendants joint tortfeasors. *See* 42 Pa. Cons. Stat. Ann. § 8322 ("'[J]oint tort-feasors' means two or more persons jointly or severally liable in tort for the *same injury* to persons or property . . . ." (emphasis added)). Here, the injury to the *Milo* Plaintiff lies in the home's health and safety hazards. Third-Party Plaintiffs have adequately alleged that Movants' manufacture and supply of defective windows contributed to those hazards. As such, Third-Party Plaintiffs have adequately alleged a claim for contribution.

### G. Indemnification

Movants also seek to dismiss Third-Party Plaintiffs' claims for indemnification. The Supreme Court of Pennsylvania has explained that indemnification "is a fault shifting mechanism, operable only when a defendant who has been liable to a plaintiff solely by operation of law, seeks to recover his loss from a defendant who was actually responsible for the accident which occasioned the loss." *Walton v. Avco Corp.*, 610 A.2d 454, 460 (Pa. 1992) (internal quotations omitted). "Because the party seeking common law indemnity must demonstrate that there was no active fault on his own part, 'indemnity is unavailable to an intentional tortfeasor because it would permit him to escape liability for his own deliberate acts.'" *Bank v. City of Philadelphia*, 991 F. Supp. 2d 523, 530 (E.D. Pa. 2014) (citation omitted).

The Joinder Complaint sufficiently alleges facts to support an inference that Movants are primarily liable for the *Milo* Plaintiff's injuries. The *Milo* Plaintiff brings intentional and non-intentional tort claims against Third-Party Plaintiffs for "building, marketing, and selling . . . an unsafe and defectively constructed home." (*Milo* Am. Compl. ¶ 1.) Third-Party Plaintiffs allege that "all construction materials at the Home were supplied by the Joinder Defendants [including Movants]" and that "all construction work at the Home was performed by the Joinder Defendants, *not by 200 CSP*." (*Milo* Joinder Compl. ¶¶ 4-5 (emphasis added).) Under Count I for indemnification, Third-Party Plaintiffs state that "[i]f damages were sustained by [Plaintiff], it was solely because of the negligence, carelessness, and intentional acts or omissions of the joinder defendants [including Movants]." (*Id.* ¶ 31.) Taken together, Third-Party Plaintiffs clearly allege that they did not take part in the construction of the home and that the Third-Party Defendants, including Movants, actually supplied the materials for the home and constructed it.

From these allegations, we can infer that Third-Party Plaintiffs' responsibility for the home was as the general contractor and seller of the home. Therefore, it is plausible that Third-Party Plaintiffs are not actively at fault for the defects in the home, and that Movants, among others, are primarily at fault.

Moreover, Third-Party Plaintiffs have sufficiently demonstrated that there is a relationship between them and Movants that would give rise to a duty to indemnify. This relationship can arise "because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible." *Builders Supply Co. v. McCabe*, 77 A.2d 368, 371 (Pa. 1951). Therefore, it makes sense that product manufacturers and suppliers who manufacture or supply a defective product are often held to indemnify distributors or sellers of the product. *See, e.g.*, *Morris*, 192 F.R.D. at 489 (noting that "a retailer has a right of indemnity against a negligent wholesaler or manufacturer" (citing *Builders Supply*, 77 A.2d at 370)); *Walasavage v. Marinelli*, 483 A.2d 509, 518 (Pa. Super. Ct. 1984) (allowing seller of vehicle to recover from manufacturer of defective tailgate because "the general rule is that indemnification is proper in such a case. The law places final responsibility in such instances upon the party primarily responsible for the defective product, in most instances its manufacturer."). Here, Third-Party Plaintiffs sold a home to Plaintiff that included defective products that Third-Party Plaintiffs had purchased from Movants. This is precisely the kind of relationship that Pennsylvania courts allow as a basis for indemnification. Therefore, Third-Party Plaintiffs' claim for indemnification will not be dismissed.

As stated above, the *Milo* Plaintiff has specifically alleged that Third-Party Plaintiffs are liable for failing to "ensure that the construction of the Home was completed in such a way that conformed to applicable building codes . . . and did not present a danger to the [family]." (*Milo*

Am. Compl. ¶ 197.)  That allegation can reasonably be interpreted as "a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible." *Builders Supply Co.*, 77 A.2d at 328.  Therefore, Third-Party Plaintiffs have adequately alleged that they have a right to indemnity from Movants, to the extent Third-Party Plaintiffs are found liable for negligence.

Movants argue that Third-Party Plaintiffs are, if anything, primary tortfeasors or joint tortfeasors with Movants, rather than secondarily liable.  We note that, if Third-Party Plaintiffs are ultimately found to be primary tortfeasors, or joint tortfeasors with Movants, rather than secondarily liable to Plaintiff, Third-Party Plaintiffs will not have a right to indemnity from Movants. *See Globe Indem. Co. v. Agway, Inc.*, 456 F.2d 472, 474-75 (3d Cir. 1972) ("[I]n the absence of a contract, a right to indemnity is not recognized as among [joint tortfeasors].")

At the pleading stage, parties are permitted to plead alternate and contrary claims.  Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.")  Third-Party Plaintiffs have plausibly alleged claims of contribution and indemnification.  Discovery will reveal which, if any, of these theories actually merits recovery. *See, e.g.*, *Temple Univ. Hosp., Inc. v. United States*, No. 16-1073, 2016 U.S. Dist. LEXIS 79649, at *2 (E.D. Pa. June 20, 2016) (allowing complaint to proceed with claims for both contribution and indemnification, "subject to discovery").[4]

---

[4] Movants also contend that they cannot be liable to Third-Party Plaintiffs for contribution or indemnity unless there is an independent claim against Movants for wrongdoing. We need not reach this issue because, as discussed above, there are independent claims against Movants.

### H.    Pleading Requirements

Movants argue that the Joinder Complaint is not pleaded with requisite specificity.  They

argue that the claims are not specific enough because:  (1) each claim begins with a "catch-all"

paragraph incorporating the paragraphs before it; (2) many of the claims are brought against

"Joinder Defendants" rather than individual defendants; and (3) the Joinder Complaint only

states "generalized, vague, and amorphous allegations."  (Movants' Mem. of Law 24-25, Mot. to

Dismiss.)  In support of their argument, Movants cite to *Bartol v. Barrowclough*, 251 F. Supp. 3d

855, 859 (E.D. Pa. 2017).  The court in *Bartol* stated that an impermissible "shotgun pleading"

includes pleadings that "contain[] multiple counts where each count adopts the allegations of all

preceding counts" and "assert multiple claims against multiple defendants without specifying

which of the defendants are responsible for which acts or omissions, or which of the defendants

the claim is brought against."  *Id.* (citation and alternations omitted).  We note that the complaint

in *Bartol* was "fifty-four pages long, [and brought] thirteen different counts against any

combination of well over seven distinct defendants," yet failed to allege whether many of the

defendants were even present at the disputed event, whether plaintiff had ever interacted with

them, whether defendants had any knowledge of the events, or which claim applied to which

"individual defendants."  *Id.* at 860.  Thus, whether a complaint is an impermissible shotgun

pleading is not wholly dependent on whether it incorporates all preceding paragraphs or names

multiple defendants, but on whether the complaint "give[s] the defendants adequate notice of the

claims against them and the grounds upon which each claim rests."   *M.B. v. Schuylkill Cty.*, No.

18-756, 2019 U.S. Dist. LEXIS 47464, at *16 (E.D. Pa. Mar. 21, 2019) (quoting *Bartol*, 251 F.

Supp. 3d at 860) (denying motion to dismiss when each count in complaint adopted all preceding

counts and when some claims "[did] not identify the 'role of each particular defendant in the claim'" because complaint otherwise put defendants on notice).

Here, the Joinder Complaint is only ten pages long and specifically identifies each Joinder Defendant. It specifically alleges that Movants manufactured and supplied defective windows that were used in the home. Attached to the Joinder Complaint is the invoice for the windows. (*Milo* Joinder Compl. Ex. E.) Moreover, it is clear from the Joinder Complaint and Plaintiff's Amended Complaint that Plaintiff is suing Third-Party Plaintiffs for defects in the construction of the home, including specific problems with windows. (*See, e.g.*, *Milo* Am. Compl. ¶ 52 ("[T]he mushroom was caused by a limited problem with the bedroom window . . . ."; *id.* Ex. E ¶ 2 ("Open gaps and voids . . . around the windows . . . also contributed to the moisture intrusion and related interior damage.").) Although each claim incorporates all the preceding paragraphs and names multiple defendants, Movants are on notice of the claims against them and the grounds upon which these claims rest.

## I. Impermissible Burden Shifting

Finally, Movants argue that Third-Party Plaintiffs have impermissibly shifted the burden of proving their claims to the Third-Party Defendants by naming multiple parties as joinder defendants "who they hope could have somehow contributed to [Plaintiff's] alleged damages." (Movants' Mem. of Law 26.) Movants cite to *Pennfield Corp. v. Meadow Valley Elec.*, 604 A.2d 1082 (Pa. Super. Ct. 1992), in which the court found that a joinder complaint impermissibly shifted the burden of proving the claim to the third-party defendants when the third-party plaintiff explicitly alleged that *either* one third-party defendant *or* the other third-party defendant was responsible for the underlying plaintiff's injuries. *Id.* at 1083. In other words, the third-party plaintiff admitted that one of the third-party defendants might not have acted in a tortious

manner, such that one third-party defendant would have to "disprove" their liability. *Id.* Here, Third-Party Plaintiffs have explicitly alleged that Third-Party Defendants are liable for Plaintiff's injuries. (*See Milo* Joinder Compl. ¶ 31 ("If damages were sustained . . . it was solely because of the negligence, carelessness, and intentional acts or omissions of the joinder defendants . . . ."; *id.* ¶ 35 ("[J]oinder defendants are liable over to 200 CSP for contribution . . . .").) It also explicitly alleges how each of the Movants is liable. (*See id.* ¶¶ 25, 28 ("Jeld-Wen, Inc. . . . manufactured windows and sold them to Tague Lumber Company that were used in the construction of the Home. . . . Tague Lumber . . . sold defective windows and building materials that were used in the construction of the Home.").)

## IV.  CONCLUSION

For the foregoing reasons, we will deny Jeld-Wen, Inc. and Tague Lumber's Motion to Dismiss the Joinder Complaint Pursuant to Rule 12(b)(6). An appropriate Order follows.

**BY THE COURT:**


***/s/ R. Barclay Surrick***