**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MILO, LLC | : | |
| *Plaintiff,* | : | Civil Action No. 2:16-cv-05759-RBS |
| | : | |
| v. | : | |
| | : | |
| VIRGIL PROCACCINO, ARTHUR ELWOOD and 200 CHRISTIAN STREET PARTNERS, LLC, | : | |
| | : | |
| *Defendants.* | : | |
| | : | |
| VIRGIL PROCACCINO, ARTHUR ELWOOD and 200 CHRISTIAN STREET PARTNERS, LLC, | : | |
| | : | |
| *Third-Party Plaintiffs,* | : | |
| | : | |
| v. | : | |
| | : | |
| AB CONSTRUCTION, LLC, DUGGAN EXCAVATION, E&A DRYWALL CORP., HIGH END DESIGN INC., JELD-WEN, INC., MAXI-TECH, INC., RED LION INSULATION, and TAGUE LUMBER, | : | |
| | : | |
| *Third-Party Defendants.* | | |

**MEMORANDUM**

**SURRICK, J.**                                                                                    **JULY 17, 2026**

Among other things, this is a case about mushrooms—and what caused them to grow inside a newly constructed house in downtown Philadelphia. The mushrooms emerged from the floorboards and walls of the house around the time the purchasing family, the Ferreiras, moved in. The parties agree that the Home experienced significant water intrusion, and that such water

1

intrusion also caused leaks, mold, and cavities in walls.  The central question in this case is who, if anyone, is responsible for the water intrusion.

Plaintiff MILO, LLC ("Plaintiff" or "MILO"), a legal entity created for the benefit of the Ferreiras' children and the record owner of the house, says the general contractors and their affiliate entity are at fault for several reasons, including violating building codes, breach of contract, and negligence.  The general contractors say it is the subcontractors' fault.  And one of the subcontractors said certain sub-subcontractors are to blame, though this Court has already concluded they are not.[1]

This decision addresses motions for summary judgment filed by four of the subcontractors—E&A Drywall Corp. ("E&A"), Jeld-Wen, Inc. ("Jeld-Wen"), Tague Lumber ("Tague"), and Builder Services Group, Inc. d/b/a Red Lion Insulation ("Red Lion," and, together with E&A, Jeld-Wen, and Tague, the "Moving Parties")—who argue the evidence in the record does not support the general contractors' third-party claims.  The Court finds these motions appropriate for resolution without oral argument.  For the reasons discussed below, we grant summary judgment in favor of Jeld-Wen and Tague, but we deny the motions of E&A and Red Lion.

I.      BACKGROUND

A. **Procedural History**

On November 4, 2016, Plaintiff initiated this lawsuit against contractors who built a home in an allegedly negligent manner.  The contractors—Virgil Procaccino ("Procaccino"), Arthur Elwood ("Elwood"), and 200 Christian Street Partners, LLC ("200 CSP," and collectively with

---

[1] *See MILO, LLC v. Procaccino*, No. 16-cv-5759, 2026 WL 1080335 (E.D. Pa. Apr. 20, 2026) [hereinafter *April MSJ Opinion*] (dismissing Stanley Stephens Co., Inc. and Wickham Hardwood Flooring from this case); *see also* ECF No. 180 (dismissing dissolved entity Carlos Carpet Services, Inc.).

Procaccino and Elwood, "Defendants" or "Third-Party Plaintiffs")—moved to dismiss, and the Court denied their motion. (*See* ECF No. 20.) Defendants thereafter filed a Joinder Complaint, joining nine of their subcontractors and suppliers ("Third-Party Defendants") as defendants, and bringing negligence, contribution, and indemnification claims against them. (*See* Joinder Compl., ECF No. 23.) The Joinder Complaint also contained a breach of implied warranty claim against Third-Party Defendants Tague and Jeld-Wen and a strict products liability claim against Jeld-Wen alone. (*Id.*) Certain Third-Party Defendants, including Tague, Jeld-Wen, and Red Lion, then moved to dismiss the Joinder Complaint and, in written memoranda, the Court denied their motions. (*See* ECF Nos. 68, 70, 72.) Discovery ensued. Two sub-subcontractors were impleaded by Third-Party Defendant Stanley Stephens Co., Inc. ("Stephens"). Discovery closed, and many of the Third-Party Defendants moved for summary judgment. On April 20, 2026, the Court granted Stephens' motion for summary judgment, thereby mooting Stephens' fourth-party claims against the sub-subcontractors.[2] (*See April MSJ Opinion*, 2026 WL 1080335.) The Moving Parties' motions for summary judgment, which this opinion addresses, remained live and ripe for disposition.

### B. Material Facts

200 CSP was the general contractor for the construction of a residential home located at 501A South 12th Street, Philadelphia, Pennsylvania (the "Home"). (200 CSP Resp. to Red Lion SOF, ECF No. 226, ¶¶ 5, 6.) Plaintiff purchased the Home in January 2015 for $1,955,000, and the Ferreiras moved in around March 20, 2015. (200 CSP Resp. to Jeld-Wen and Tague SOF, ECF No. 227, ¶¶ 6, 22.) A punch list—an addendum to the real estate contract for the sale of the

---

[2] One of the sub-subcontractors, Carlos Carpet Services, Inc., was dismissed from this action without opposition by Order dated September 20, 2023, before Stephens' motion for summary judgment was granted. (*See* ECF No. 180.)

Home—noted that, as early as October 2014, there was "water pooling" at "top of [the] parapet wall" and "repair work done on ceiling due to water leak." (Am. Compl. Ex. C, ECF No. 12; 200 CSP Resp. to Red Lion SOF, ¶ 25.) In February 2015, a mushroom grew near the floorboard in one of the Home's bedrooms. (D. Ferreira Dep., Jeld-Wen and Tague Mem. Ex. C, ECF No. 213-3, 117:6–17.) In July 2015, a larger mushroom emerged in the same room. (*Id.*) That same month, at the Ferreiras' request, Blaine Illingworth III, a professional from Worldwide Engineering Service and Training, performed a technical inspection of the Home, noting that the Ferreiras experienced "continuous issues with water penetration of the [Home] since occupying it." (Residence Condition Study [Preliminary] ("Illingworth Report"), Jeld-Wen and Tague Mem. Ex. I, ECF No. 213-3, at 2; *see also* Jeld-Wen and Tague SOF, ECF No. 213-2, ¶ 8.)

Mr. Illingworth formed two conclusions based on his technical inspection. (Illingworth Report at 8.) First, "[t]he improper installation, flashing and sealing of the upper front windows and siding panels [ ] led to prolonged water penetration" of the Home's front walls. (*Id.*) Second, "[t]he improper construction, flashing and sealing of the rear balcony interior wall and a likely leak in the upper roof drain scupper [ ] led to repeated water penetration of the fourth floor rear wall and the third floor ceiling below it." (*Id.*) His report also noted that the "main areas of present concern" were the "third floor rear bedroom ceiling below a small rear balcony" and "the corner window area of the third floor front bedroom," and that "[f]ungal growths [ ] appeared twice at the floorline of the third floor front bedroom." (*Id.* at 2.)

The Ferreiras also hired a mold inspector, who discovered mold in the Home and recommended they vacate the premises. (D. Ferreira Dep. at 135:1–136:17, 141:23–142:2.) They vacated the Home in November 2015. (*Id.*; 200 CSP Resp. to Red Lion SOF, ¶ 21.) In the years after, the Ferreiras engaged with 200 CSP, Procaccino, and Elwood, as well as other contractors

4

not parties to this litigation, to remediate the purported construction deficiencies. (D. Ferreira Dep. at 159:1–162:11, 197:15–198:19.)  At his deposition, Mr. Ferreira testified that more than $1 million was spent to repair the Home. (*Id.* 200:17–23.)  In 2023, more than six years after this litigation commenced, the Ferreiras sold the Home for $1,950,000—slightly less than the initial purchase price.  (200 CSP Resp. to Jeld-Wen and Tague SOF, ¶ 22.)  Through this litigation, Plaintiff seeks economic damages for diminution in the Home's value as well as reimbursement of inspection, engineering, remediation, and relocation costs. (*Id.*)

Third-Party Defendant Jeld-Wen is in the business of manufacturing windows and doors. (200 CSP Resp. to Jeld-Wen and Tague SOF, ¶¶ 2,3.)  Tague is a materials supplier. (*Id.*)  Jeld-Wen manufactured the windows and doors used in the Home (the "JW Products") and Tague supplied them to Third-Party Plaintiffs in 2013. (*Id.* ¶ 4.)  The JW Products and Tague's supply thereof were covered by express written warranties that disclaimed the implied warranties of merchantability and fitness for a particular purpose. (*Id.* ¶¶ 10, 11, 13.)  E&A ultimately installed the windows in the Home; the Third-Party Plaintiffs agree that neither Jeld-Wen nor Tague were involved in the original installation. (*Id.* ¶ 5.)

E&A is an entity based in New Jersey.  (200 CSP Resp. to E&A SOF, ECF No. 222, ¶ 5.) In the Spring of 2013, E&A was hired to perform certain framing work on the Home, including window, sheet rock, taping, and spackle work. (*Id.*)  E&A was insured at the time it was hired, but it claims its insurer has since declared insolvency. (*Id.* ¶¶ 5, 6; E&A SOF, ECF No. 217, ¶¶ 5,6.)

Red Lion is an insulation contractor and installed insulation at the Home pursuant to a contract with 200 CSP.  (200 CSP Resp. to Red Lion SOF ¶¶ 11, 12; Work Agreement, Red Lion Mem. Ex. A, ECF No. 214-4.)  The Third-Party Plaintiffs agree that Red Lion did not perform any

exterior work at the Home and did not install any waterproofing materials to the Home's envelope. (200 CSP Resp. to Red Lion SOF ¶¶ 13, 14.)

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the nonmoving party.  *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "[A] factual dispute is material only if it might affect the outcome of the suit under governing law."  *Id*. The court must view the evidence in the light most favorable to the nonmoving party.  *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011).

Where the nonmoving party bears the burden of proof at trial, the moving party may identify an absence of a genuine issue of material fact by showing the court that there is no evidence in the record supporting the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004).  If the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (noting that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat. Bank of Ariz. V. Cities Service Co.*, 391 U.S. 253, 288–89 (1968)).

III.    DISCUSSION

The Moving Parties present a variety of arguments for summary judgment. E&A claims its insurer went bankrupt, and therefore summary judgment is warranted under the New Jersey Property-Liability Insurance Guaranty Association Act, codified at N.J. Stat. Ann. Section 17:30A-1, *et seq*. Jeld-Wen and Tague argue the evidence is insufficient to support Third-Party Plaintiffs' claims, that the gist of the action and economic loss doctrines entitle them to summary judgment and that, in any event, the parties' contractual warranties foreclose liability. Red Lion claims that discovery produced no evidence that would support a finding of negligence against it. We address these arguments in turn below.

A.    **E&A is Not Entitled to Summary Judgment Because The New Jersey Property-Liability Guaranty Association Act Does Not Foreclose Finding Liability, and Genuine Questions of Material Fact Exist Regarding Third-Party Plaintiffs' Negligence Claims Against E&A.**

Third-Party Plaintiffs bring counts of negligence, contribution, and indemnification against E&A. In its motion for summary judgment, E&A does not argue that there are no issues of material fact regarding its alleged negligence or Third-Party Plaintiffs' contribution and indemnification claims. Instead, E&A's sole argument for summary judgment rests on the New Jersey Property-Liability Insurance Guaranty Association Act (the "Act").

The Act requires that all insurers in New Jersey, with limited exceptions, join the New Jersey Property-Liability Insurance Guaranty Association ("NJPLIGA") in order to transact business. N.J. Stat. Ann. § 17:30A-6; *R.R. Roofing & Bldg. Supply Co. v. Fin. Fire & Cas. Co.*, 427 A.2d 66, 69 (N.J. 1981). Under the Act, NJPLIGA is obligated to assume the contractual obligations of an insolvent insurer and to pay certain claims up to the limit of the policyholder's contract, subject to a maximum liability of $300,000. N.J. Stat. Ann. § 17:30A–8a(1); *Carpenter Tech. Corp. v. Admiral Ins. Co.*, 800 A.2d 54, 56 (N.J. 2002). The Act was created to "avoid

7

financial loss to claimants or policyholders because of the insolvency of insurance companies." *Carpenter*, 800 A.2d at 60 (quoting N.J. Senate Bill Statement, S. 1004, c.17 (April 11, 1974)) (internal quotation marks omitted). A central feature of the Act is its exhaustion requirement, under which "a policyholder first must exhaust his or her policy with [a] solvent insurer before NJPLIGA has any statutory obligation to pay the policyholder." *Carpenter*, 800 A.2d at 61. In practice, this makes NJPLIGA "an insurer of last resort when substituting for an insolvent carrier," *Farmers Mut. Fire Ins. Co. of Salem v. New Jersey Prop.-Liab. Ins. Guar. Ass'n*, 74 A.3d 860, 863 (N.J. 2013), as it requires all solvent insurance companies' policy limits to be exhausted before NJPLIGA is obliged to pay. N.J. Stat. Ann. § 17:30A-12(b).

E&A's argument under the Act is straightforward. E&A claims that: (i) its insurer became insolvent, (ii) the insurance policies of Third-Party Plaintiffs and other Third-Party Defendants would cover the expected damages in this case, and (iii) the Act applies, making NJPLIGA E&A's new insurer. Because NJPLIGA is an insurer of last resort, and because damages can likely be covered by other parties' insurance policies, E&A argues there is "very little chance that there would be any payment" from NJPLIGA in this case. (E&A Repl., ECF. No. 233, 3.) Therefore, "[a]ny insistence on E&A [ ] remaining a party is unreasonable," and E&A's "presence in this matter is unnecessary." (*Id.* at 6–7.)

This argument is unconvincing. The mere fact that, if multiple parties are found liable, other parties' insurers will have to pay damages before E&A's insurer is obligated to do so does not foreclose finding liability as to E&A. Nor does it provide a basis for this Court to conclude that there is no genuine issue of material fact as to E&A's alleged negligence in the construction of the Home. To the contrary—there is at least some evidence in the record that could support a finding of negligence as to E&A. For instance, the expert report prepared by Engineering Systems

Inc. (the "ESi Report") on behalf of 200 CSP—attached as an exhibit to E&A's reply brief—opines

that "the deficient window flashings [installed in the Home] are a construction deficiency by E&A

Drywall Corp."  (ESi Report, E&A Repl. Ex. D, ECF No. 233-4, 5.)  A reasonable trier of fact

could conclude from this expert opinion and other evidence[3] in the record that E&A breached its

duty and that deficient window flashings installed by E&A contributed to Plaintiff's damages.

E&A does not rebut this evidence or the merits of Third-Party Plaintiffs' claims.  Instead,

it notes that the ESi Report also ascribes liability to other insured Third-Party Defendants and

argues that, as a practical matter, given the Act's applicability and exhaustion requirement, there

is "very little chance that there would be any payment" from E&A in this case.  (E&A Repl. at 3.)

Even if that were indisputably true, it would not be enough to warrant summary judgment.  On this

point, the Court is unaware of, and E&A has not identified, any authority holding that a defendant

is entitled to summary judgment merely because there was "little chance" that the defendant would

ultimately pay damages if found liable at trial.

At summary judgment, this Court is tasked with determining whether, as a matter of law,

the moving party is entitled to judgment in its favor.  "When the movant is the defendant, they

have the burden of demonstrating that the plaintiff 'has failed to establish one or more essential

elements of her case.'"  *Bennett v. SEPTA*, No. 23-1271, 2024 WL 404959, at *6 (E.D. Pa. Feb. 2,

2024) (quoting *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013)), *aff'd sub nom. Bennett

v. Se. Pa. Transp. Auth.*, No. 24-1376, 2025 WL 1248815 (3d Cir. Apr. 30, 2025).  E&A has not

met this burden.  It does not contend that the material facts underlying Third-Party Plaintiffs'

negligence, contribution, or indemnification claims are undisputed in its favor, such that Third-

---

[3] For example, it is undisputed that E&A installed the windows in the Home, *see* E&A SOF, ¶ 5, and Mr. Illingworth's technical inspection claimed the windows were improperly installed, *see* Illingworth Report at 8.

Party Plaintiffs cannot establish an element of their case.  Furthermore, based on our review of the record, genuine questions of material fact exist regarding whether E&A acted negligently.  As a result, E&A has not shown that it is entitled to summary judgment on Third-Party Plaintiffs' claims.  Its motion is denied.

B. **Jeld-Wen and Tague are Entitled to Summary Judgment Because No Genuine Issues of Material Fact Exist Regarding the JW Products.**

Third-Party Plaintiffs assert the same claims of negligence, contribution, and common law indemnification against Jeld-Wen and Tague.  (Joinder Compl. at 6–7.)  In addition, they claim that Jeld-Wen and Tague breached the implied warranties of merchantability and fitness for a particular purpose[4] and assert that Jeld-Wen is strictly liable for selling its windows "in a defective and unreasonably dangerous condition."  (*Id.* at 8–9.)

Jeld-Wen and Tague present several arguments in favor of summary judgment.  First, they claim that discovery has not revealed evidence of any product defect in their windows, and that all parties' experts admitted the windows themselves did not contribute to water intrusion.  (Jeld-Wen and Tague Mem., ECF No. 213-1, 4–9).  Second, they claim that the economic loss and gist of the action doctrines preclude Third-Party Plaintiffs' tort and tort-based claims—that is, every claim except Count IV for breach of the implied warranties of merchantability and fitness for a particular purpose—an argument we rejected at the motion to dismiss stage.  (*Id.* at 13–19.)  With respect to Count IV, Jeld-Wen and Tague argue that any implied warranties are expressly disclaimed by the

---

[4] Count IV of the Joinder Complaint is titled "Breach of Implied Warranty of Fitness for Ordinary Purpose," but the substantive allegations make clear that Third-Party Plaintiffs mean to assert breach of the implied warranty of merchantability as well as breach of the implied warranty of fitness for a particular purpose. (*See* Joinder Compl., ¶¶ 46–48.)  The implied warranty of merchantability is essentially a warranty that a good will be fit for its ordinary purpose, and so we interpret Third-Party Plaintiffs' use of the phrase "Implied Warranty of Fitness for Ordinary Purpose" to mean the implied warranty of merchantability. *See Bruno v. Roundhouse Cycles Inc.*, 750 F. Supp. 3d 501, 510–11 (W.D. Pa. 2024) ("To sufficiently allege breach of the implied warranty of merchantability, the product purchased must be unfit for its ordinary purpose.") (citing 13 Pa. Cons. Stat. Ann. § 2314(b)(3)); 18 Williston on Contracts § 52:77 (4th Ed.) ("[M]erchantability requires only that the goods be fit for their ordinary purpose.").

language of express contractual warranties operative in this case. (*Id.* at 20–21.) Finally, they claim that all of the Third-Party Plaintiffs' claims are barred by statutes of limitations. (*Id.* at 22–28.)

Third-Party Plaintiffs oppose Jeld-Wen and Tague's motion on a single ground: they argue, for the first time in their opposition brief, that Jeld-Wen and Tague are vicariously liable for the construction work of one J.F. Selet, Inc. ("Selet"). (*See* 200 CSP Opp'n Mem. to Jeld-Wen and Tague MSJ, ECF No. 229, 5–7.) Third-Party Plaintiffs do not meaningfully engage with Jeld-Wen and Tague's legal arguments; they contend only that Jeld-Wen and Tague are liable because of Selet's construction work. (*Id.*)

MILO also filed an opposition to Jeld-Wen and Tague's motion, claiming that there is a genuine issue of material fact regarding deficiencies in the windows manufactured by Jeld-Wen and sold by Tague. (*See* MILO Opp'n Mem. to Jeld-Wen and Tague MSJ, ECF No. 224.) Because MILO has no direct claims against Jeld-Wen or Tague, Jeld-Wen and Tague argue that MILO lacks standing to oppose their motion. (*See* Jeld-Wen and Tague Repl., ECF No. 231, 1–3.) We address the issue of standing first before analyzing whether Jeld-Wen and Tague are entitled to summary judgment.

Regarding standing, we acknowledge that courts from outside this District have held that a plaintiff lacks standing to oppose a third-party defendant's motion for summary judgment where, like here, the plaintiff has no claims against the third-party defendant. *See Legendre v. Louisiana Ins. Guar. Ass'n*, No. 22-1767, 2024 WL 1556842, at *3–4 (E.D. La. Apr. 10, 2024) (citing *Cortez v. Lamorak Ins. Co.*, No. 20-2389, 2022 WL 3370149 (E.D. La. Aug. 16, 2022)). However, we need not conclusively rule on whether MILO has standing to oppose Jeld-Wen and Tague's motion for summary judgment in the instant case. Our task on summary judgment is to "consider all

record evidence and supported relevant facts in the light most favorable to the non-movant." *Howland v. Cincinnati Ins. Co.*, 702 F. Supp. 3d 335, 338 (E.D. Pa. 2023) (citing *Liberty Lobby*, 477 U.S. at 255). Thus, regardless of whether MILO has standing to oppose Jeld-Wen and Tague's motion, we must consider the evidence in the record, including the evidence MILO cites in its brief, to determine whether the undisputed facts show that Jeld-Wen and Tague are entitled to judgment as a matter of law.

### 1. *Third-Party Plaintiffs' Belated Argument Regarding J.F. Selet, Inc. Does Not Create a Genuine Issue of Material Fact.*

Third-Party Plaintiffs' opposition hinges on the theory that Jeld-Wen and Tague are responsible for the construction efforts of Selet, a non-party that Third-Party Plaintiffs claim Tague "retained" "[w]ith the consent and approval of Jeld-Wen" and that Third-Party Plaintiffs admit is an independent contractor. (*See* 200 CSP Opp'n Mem. to Jeld-Wen and Tague MSJ at 5.) According to the opposition, Selet replaced several of the windows in the Home after they were installed by E&A, but the windows continued to leak after their replacement. (*Id.*) According to the opposition, this makes Jeld-Wen and Tague "at least partly responsible for damages sustained by Plaintiffs," presumably because Selet was "retained" by Tague with Jeld-Wen's consent. (*Id.*) This line of reasoning is essentially a new theory of liability that parts ways from Third-Party Plaintiffs' Joinder Complaint, which alleged that the windows themselves were deficient. (*See* Joinder Compl., ¶¶ 25, 28, 38, 47, 54.)

Third-Party Plaintiffs' new allegations about Selet do not create a genuine issue of material fact relevant to the claims against Jeld-Wen and Tague contained in the Joinder Complaint. Those claims allege that either the windows themselves were defective or that Jeld-Wen and Tague were negligent for a host of reasons not mentioned in Third-Party Plaintiffs' current opposition, including "[f]ailing to comply with industry standards," "[f]ailing to comply with applicable

12

building codes," "[f]ailing to perform their work in a reasonable and workmanlike manner," and "[u]tilizing defective products in the installation of components and/or construction of the Home." (Joinder Compl., ¶ 39(a)-(e).)  Even construing the Joinder Complaint favorably to Third-Party Plaintiffs, it cannot be read as asserting a claim against Jeld-Wen and Tague for vicarious liability for potential negligence in unmentioned window-replacement work, much less for the separate tort of failure to supervise a non-party independent contractor.  *See Torain v. City of Phila.*, No. 14-1643, 2023 WL 174951, at *7 (E.D. Pa. Jan. 12, 2023) ("Although complaints are to be construed favorably to the plaintiff, courts should not read causes of action into a complaint when they are not present, as defendants must be given 'fair notice' of intent to pursue particular claims.")

We note that Third-Party Plaintiffs could have brought claims against Selet directly but did not.  They could have pled negligent supervision claims against Jeld-Wen and Tague.  They did not.  To the extent Third-Party Plaintiffs seek to amend their complaint now to assert some claim against Tague and Jeld-Wen that sounds in vicarious liability, this Court will not permit them to do so—not at this late hour, after discovery has closed and in a case that is nearly a decade old.  *See Carr v. Gillis Associated Indus., Inc.*, 227 Fed. App'x 172, 176 (3d Cir. 2007) ("District Courts have broad discretion to disallow the addition of new theories of liability at the eleventh hour."); *Torain*, 2023 WL 174951, at *6–7 ("Failing to address Defendant's arguments for summary judgment, Plaintiff instead dedicates nearly the entire argument section of his opposition to supporting this newly asserted claim.  It is improper to raise a new claim for the first time at summary judgment (or in opposition to summary judgment) without properly pleading it in the complaint."); *see also Alston v. Park Pleasant, Inc.*, No. 14-7237, 2015 WL 6180967, at *4 n.3 (E.D. Pa. Oct. 21, 2015) (barring theory of liability pursued for first time by plaintiff in opposition

to motion for summary judgment because there were not "specific factual allegations in [the plaintiff's] Complaint" to support theory), *aff'd,* 679 F. App'x 169 (3d Cir. 2017).

Though we find that Third-Party Plaintiffs' belated argument regarding Selet does not itself create a genuine issue of material fact, it does not necessarily follow that Jeld-Wen and Tague are entitled to summary judgment. We must still analyze the record as a whole to determine whether there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for Third-Party Plaintiffs. *See Kaucher*, 455 F.3d at 423; *Howland*, 702 F. Supp. 3d at 338.

2. *The Undisputed Facts Show that Jeld-Wen and Tague are Entitled to Judgment as a Matter of Law.*[5]

Despite originally alleging that the windows manufactured by Jeld-Wen and sold by Tague were defective, Third-Party Plaintiffs now admit that "[n]o party, or expert, has shown there was any product issue with any of the building materials supplied by Tague, including the JW Products."[6] (*See* 200 CSP Resp. to Jeld-Wen and Tague SOF, ¶ 18.) MILO, the original plaintiff in this case, disagrees. MILO contends that there is evidence in the record of manufacturing deficiencies in the windows such that Jeld-Wen and Tague can be held liable for the Home's construction defects. (*See* MILO Opp'n Mem. to Jeld-Wen and Tague MSJ at 6–8.) The only evidence MILO points to is what MILO's expert, Daniel L. Isackson of Rimkus Consulting Group, Inc., referred to in his Sept. 29, 2022 expert report as the "premature presence of condensation inside of the insulated glass units in the upper-front, second-floor corner window." (Third

---

[5] Because we find that there is no genuine dispute of material fact and Jeld-Wen and Tague are therefore entitled to judgment as a matter of law, we need not and do not address Jeld-Wen and Tague's alternative arguments for summary judgment, namely, that the economic loss and gist of the action doctrines preclude tort liability against them, and/or that the Third-Party Plaintiffs' claims are time-barred.

[6] Third-Party Plaintiffs somewhat temper this admission by asserting that the experts involved in this case "either offered no relevant opinions or admitted to not possessing the necessary window manufacturing qualifications." (*See* 200 CSP Resp. to Jeld-Wen and Tague SOF, ¶ 18 n.3.) They also supplemented their admission with the supplementary allegation that the replacement windows installed by Selet "experienced the same water infiltration issues and had to be replaced yet again." (*See id.*, ¶ 18.)

14

Supplemental Report of Findings ("Third Supplemental Rimkus Report"), MILO Opp'n Mem. to Jeld-Wen and Tague MSJ Ex. A, ECF No. 224-2, 27). That is, there was condensation observed in a single Jeld-Wen window in January 2021. Mr. Isackson concluded that the condensation was evidence of a manufacturing defect based on academic literature indicating that properly manufactured windows only have a 1% chance of insulated glass failure at 15 years of service; here, there was insulated glass failure (*i.e.*, condensation) within 8 years of service. (*Id.*) In his July 25, 2024 deposition, Mr. Isackson softened his written opinion that the condensation in this single window "was" a manufacturing defect, clarifying that the condensation was merely "consistent with" one. (*See* Isackson Dep. July 25, 2024 ("Isackson Dep."), Jeld-Wen and Tague Mem. Ex. J, ECF No. 213-3, 214:4–215:12.) He further explained that he believed the defective part of the window in question was its perimeter seal. (*Id.* at 215:24–216:3.) When asked how, specifically, the perimeter seal was defective, Mr. Isackson could not say, testifying only that there was a "breach" of the seal:

> **Q:** What was defective about the perimeter seal?
>
> **A:** We -- okay. What we found is that moisture got into the area that resulted in fogging so there is a breach; we don't know the specific cause of the breach.

(*Id.* at 216:21–217:1.) In the same deposition testimony, Mr. Isackson opined that a perimeter seal failure is "not always a manufacturing defect," and that other non-manufacturing reasons for seal failure include prolonged moisture contact and extreme weather. (*Id.* at 215:1–7; 222:9–19.)

Jeld-Wen and Tague argue that Mr. Isackson is not qualified to opine on fenestration issues; MILO responds by asserting that this *Daubert*-style attack on its expert is untimely, and that, in any event, Mr. Isackson is qualified to offer expert testimony on fenestration. But we need not reach these issues. Even assuming Mr. Isackson is a qualified fenestration expert and that his testimony is admissible, his testimony does not present a genuine issue of material fact relevant to

any of Third-Party Plaintiffs' claims.  The weight MILO places on Mr. Isackson's conclusion that condensation on a single window's glass panes is evidence of a manufacturing defect is substantially undercut by Mr. Isackson's later admission that the purported seal failure did not contribute to water infiltration in the home MILO purchased:

> **Q:** And these two -- these two IGUs with seal failures, they didn't allow any water to infiltrate so the structure of the property, right, the moisture was confined to the inside of the IGU itself, correct?
>
> **A:** Correct.

(Isackson Dep. at 227:11–16.)  This testimony, coupled with Third-Party Plaintiffs' own admission that no party has shown that there were problems with the materials manufactured by Jeld-Wen and supplied by Tague, *see* 200 CSP Response to Jeld-Wen and Tague SOF, ¶ 18, leads us to conclude that no rational trier of fact could find that Jeld-Wen or Tague were liable with regard to Third-Party Plaintiffs' claims.  We analyze those claims briefly below.

### a.  Negligence

In Pennsylvania, to prevail on a claim of negligence, a plaintiff must establish four elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the defendant's breach and the resulting injury; and (4) injury suffered by the plaintiffs.  *See Estate of Zimmerman v. Se. Pennsylvania Transp. Auth.*, 168 F.3d 680, 684 (3d Cir. 1999) (citing *Estate of Swift v. Ne. Hosp. of Philadelphia*, 690 A.2d 719, 722 (Pa. Super. 1997)).  "The failure to establish any one of these elements is a ground for summary judgment." *Id.* (citing *Celotex Corp.*, 477 U.S. at 322).

Here, even assuming that Jeld-Wen and Tague owed a general duty to Third-Party Plaintiffs and breached that duty—elements which neither Third-Party Plaintiffs nor MILO explicitly address in their briefs—there is no evidence in the record that Jeld-Wen and Tague caused or contributed to the water infiltration and resulting damage to the Home.  As recounted above, the

only evidence the nonmoving parties point to is Mr. Isackson's expert testimony, but even Mr. Isackson admits that the purported issues with Jeld-Wen's windows did not lead to water infiltration. (Isackson Dep. at 226:17–227:16.) The absolute failure to establish causation means Jeld-Wen and Tague are entitled to summary judgment on Third-Party Plaintiffs' negligence claim.

b.   Strict Products Liability

Third-Party Plaintiffs seek recovery against Jeld-Wen for strict products liability, which in Pennsylvania is governed by the Restatement (Second) of Torts § 402A. *See Sullivan v. Werner Co.*, 306 A.3d 846, 849 (Pa. 2023) (reaffirming the continued validity of *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014), which held that Pennsylvania remains a "Second Restatement jurisdiction"). Section 402A imposes liability on a seller of "any product in a defective condition unreasonably dangerous to the user or consumer." Restatement (Second) of Torts, § 402A. "To prevail in an action under section 402A, the plaintiff must prove that the product was defective, the defect existed when it left the defendant's hands, and the defect caused the harm." *Barton v. Lowe's Home Ctrs., Inc.*, 124 A.3d 349, 354 (Pa. Super. 2015) (citing *Riley v. Warren Mfg., Inc.*, 688 A.2d 221, 224 (Pa. Super. 1997)).

The same lack of causal evidence fatal to Third-Party Plaintiffs' negligence claim bars recovery for strict products liability. Here, even assuming the single Jeld-Wen window in question was defective when it left Jeld-Wen's hands, there is no evidence in the record that the window caused any harm for which MILO seeks damages. All evidence in the record indicates the Jeld-Wen windows did not contribute to, much less cause, the water infiltration that damaged the Home. As a result, Jeld-Wen and Tague are entitled to summary judgment on Third-Party Plaintiffs' strict products liability claim.

17

c.   Contribution and Common Law Indemnification

Because Jeld-Wen and Tague are entitled to summary judgment on Third-Party Plaintiffs' tort claims, it necessarily follows that they are also entitled to summary judgment on Third-Party Plaintiffs' contribution and common law indemnification claims, both of which require underlying tortious conduct for which the defendant bears responsibility.  *See April MSJ Opinion*, 2026 WL 1080335, at *3–4 (granting summary judgment on contribution and common law indemnification claims where third-party defendant was entitled to summary judgment on underlying tort claim).

d.   Breach of Implied Warranties

Third-Party Plaintiffs admit that Jeld-Wen's products and Tague's supply thereof were covered by express written warranties.  (*See* 200 CSP Resp. to Jeld-Wen and Tague SOF, ¶¶ 10, 11, 13.)  Those warranties both expressly disclaimed the implied warranties of merchantability and fitness for a particular purpose.  (*See id.*)  In Pennsylvania, conspicuous express disclaimers of implied warranties are generally enforceable.  *See Axalta Coating Sys., LLC v. Midwest II, Inc.*, 217 F. Supp. 3d 813, 819 (E.D. Pa. 2016) ("Such conspicuous disclaimers are enforceable under Pennsylvania law.") (citing 13 Pa. Cons. Stat. Ann. § 2316(b) (stating implied warranties can be disclaimed by conspicuous language)).  Perhaps recognizing the futility of their implied warranty claim in light of the contractual language, Third-Party Plaintiffs do not address the claim in their opposition papers.  We will therefore consider the implied warranty claim abandoned and grant summary judgment for Jeld-Wen and Tague.  *See, e.g.*, *Campbell v. Jefferson Univ. Physicians*, 22 F. Supp. 3d 478, 487 (E.D. Pa. 2014) ("[W]hen a plaintiff responds to a defendant's summary judgment motion but fails to address the substance of any challenge to particular claims, that failure 'constitutes an abandonment of th[o]se causes of action and essentially acts as a waiver of th[o]se

issues.'") (quoting *Skirpan v. Pinnacle Health Hosps.*, No. 1:07-cv-1703, 2010 WL 3632536, at *6 (M.D. Pa. Apr. 21, 2010)).

C. **Genuine Issues of Material Fact Exist Regarding the Insulation in the Home, Precluding Summary Judgment as to Red Lion.**

Third-Party Plaintiffs allege that Red Lion, who installed insulation in the Home, was negligent and seek contribution and common law indemnification. Red Lion argues that there is no evidence in the record that the insulation Red Lion installed caused or contributed to water intrusion and no evidence that Red Lion breached any duty or damaged the Home. (Red Lion Mem., ECF No. 214-2, 2.) In response, Third-Party Plaintiffs admit that Red Lion's insulation work was not responsible for preventing water intrusion *per se* but contend that Red Lion failed to properly insulate the Home's attic space. (*See* 200 CSP Resp. to Red Lion SOF, ECF No. 226, ¶¶ 2, 4.) They argue that this failure resulted in condensation forming underneath the Home's roof deck and parapet walls, exacerbating the water damage and ultimately necessitating replacement of the roof deck and parapet walls. (*Id.*, ¶ 4; 200 CSP Opp'n Mem. to Red Lion MSJ, ECF No. 226-1, 6–9.) In support, they cite the testimony of Plaintiff's expert, Mr. Isackson, who opined that Red Lion failed to insulate the Home's attic properly. (*Id.*) Plaintiff likewise contends that "[t]here is enough evidence produced to reasonably infer that Red Lion performed its work during the construction of the house negligently and in violation of the industry standard," again citing to Mr. Isackson's testimony. (*See* MILO Opp'n Mem. to Red Lion MSJ, ECF No. 225-1, 7–8, 10.)[7]

---

[7] Plaintiff also argues that summary judgment should be precluded because "whether Red Lion's services extended beyond insulation work is a genuine issue of material fact in this case." (MILO Opp'n Mem. to Red Lion MSJ at 7.) Although we need not reach it, this argument is conclusory. Plaintiff cites no evidence in the record suggesting that Red Lion performed anything other than the tasks outlined on the July 2, 2013 Work Agreement entered into by Red Lion and 200 Chirstian Street Partners—tasks which appear to relate only to insulation. (*See* Work Agreement, Red Lion Mem. Ex. A, ECF No. 214-4.) Plaintiff's assertion that "it was difficult to determine which subcontractor was responsible for certain deficiencies" based on its expert's testimony that it was difficult to identify which party was responsible for failing to install a shelf angle, *see* MILO Opp'n Mem. to Red Lion MSJ at 6–7, does not create a genuine issue of material fact regarding the scope of Red Lion's work.

At his deposition, Mr. Isackson testified that spray foam insulation was installed "three or four inches below the roof deck." (Isackson Dep. at 115:3–12.) Between that insulation and the insulation installed directly on top of the wall board ceiling panels, there was a "three-to-six-inch gap." (*Id.*) According to Mr. Isackson, the gap did not comply with "the requirements for an unvented attic," and, as part of the Home's repair process, the area needed to be "deconstructed" so that "an assembly that . . . met the requirements of the building code for an unvented attic" could be installed. (*Id.*) Mr. Isackson also testified that condensation formed in this "improperly uninsulated unvented attic" and "went to the parapet walls . . . then it dripped out and then it got onto the top of the roof." (*Id.* at 194:6–19.)[8]

In its reply to 200 CSP's opposition to its motion, Red Lion argues that Mr. Isackson also stated the attic should have been ventilated to begin with, but was not—a design issue rather than a construction or insulation issue. (*See* Red Lion Repl. To 200 CSP Opp'n Mem., ECF No. 236, 2.) Even if there were fundamental design issues with the Home, however, Red Lion's insulation work could have been installed negligently and exacerbated water damage principally caused by those design issues. Red Lion also notes that many other experts in this case did not claim its insulation caused condensation issues. (*See id.* at 3–4.) In fact, Red Lion's own expert, Timothy

---

[8] In addition, Mr. Isackson noted in one of his filed reports "[i]nsufficient insulation and/or air barrier below the cupped wood flooring in the rear second-floor dining room above the unheated garage." (Third Supplemental Rimkus Report at 5.) Citing this observation, Plaintiff opposes Red Lion's motion because Mr. Isackson concluded that inadequate insulation "*might* have been one of the causes of the moisture damage of the wood flooring." (MILO Opp'n Mem. to Red Lion MSJ at 8 (emphasis added) (citing Isackson Dep. at 54:15–55:19).) Based on the parties' briefing, the insulation "below the cupped wood flooring" is separate and distinct from the insulation below the roof deck (described above). But the exact relationship between the two is not clear on the record before us. Mr. Isackson did not opine with any degree of certainty that inadequate insulation was the cause of damage to the cupped wood flooring. (*See* Isackson Dep. at 54:15–55:19.) He did, however, affirmatively conclude that the insulation configuration below the roof deck permitted condensation that caused damage to the parapet walls. (Isackson Dep. at 193–194.)

20

J. Carlsen, P.E., opined that the air gap identified by Isackson had no impact on water infiltration whatsoever.  (*See* Carlsen Dep., Red Lion Repl. To 200 CSP Opp'n Mem. Ex. S, 49:7–10.)

The competing expert testimony between Isackson—who opined the insulation was not code-compliant and caused damage to the parapet walls—and Carlsen, who disagreed, presents a genuine dispute of material fact regarding whether the attic's insulation gap contributed to the Home's water damage, and if so, whether Red Lion's insulation work was negligent.  We cannot resolve the issue on summary judgment.  *See, e.g.*, *McCloskey v. Westfield Ins. Co.*, No. 15-6210, 2016 WL 6821900, at *3 (E.D. Pa. Nov. 18, 2016) ("The parties have submitted dueling expert reports on this issue, and the Court cannot weigh this competing testimony on a summary judgment motion."); *Bender v. Haier US Appliance Sols., Inc.*, No. 5:24-cv-5750-JMG, 2026 WL 852135, at *4 (E.D. Pa. Mar. 27, 2026) (noting that a "battle of the experts . . . . 'typically precludes the granting of a motion for summary judgment'") (quoting *Nelson v. Am. Honda Motor Co., Inc.*, No. 1:18-cv-210, 2021 WL 2877919, at *5 (W.D. Pa. May 17, 2021)).

To be clear, and as Red Lion rightly points out, there is evidence in the record suggesting that Red Lion did not breach any duty.  Third-Party Plaintiff Procaccino testified that both the construction superintendent and a City of Philadelphia building inspector inspected Red Lion's insulation work and approved it.  (Procaccino Dep., Red Lion Mem. Ex. F, ECF No. 214-4, 116:5–20.)  Third-Party Plaintiff Elwood testified that he was not aware of any issue with the insulation's installation.  (Elwood Dep., Red Lion Repl. To 200 CSP Opp'n Mem. Ex. R, ECF No. 236-1, 171:5–9.)  Such evidence supports Red Lion's contention that it performed in a reasonable and workmanlike manner and complied with its duties in installing the insulation.

Nevertheless, on this motion for summary judgment we must view the evidence in the light most favorable to Third-Party Plaintiffs and resolve any doubts against Red Lion.  *See Doe*

21

*v. Cnty. of Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001). Constrained by this standard, we find that Mr. Isackson's expert report and deposition testimony contain more than mere conclusory assertions and present genuine issues of material fact regarding the insulation efforts of Red Lion, whether Red Lion acted in conformity with the relevant standard of care, and whether Red Lion contributed to the damage to the Home. Red Lion's motion for summary judgment is therefore denied.

## IV.    CONCLUSION

For the foregoing reasons, the Court will deny E&A's motion for summary judgment, grant Jeld-Wen and Tague's motion, and deny Red Lion's motion. An appropriate Order will follow.

BY THE COURT:

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**

22